# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

_____

PRISM TECHNOLOGIES LLC,
*Plaintiff-Cross-Appellant*,

v.

SPRINT SPECTRUM L.P., DBA SPRINT PCS,
*Defendant -Appellant*.

_____

Appeal from the United States District Court for the District of Nebraska
in Case No. 8:12-cv-00123-LES-TDT, Senior Judge Lyle E. Strom

_____

## [NON-CONFIDENTIAL] PLAINTIFF-APPELLEE AND CROSS-APPELLANT PRISM TECHNOLOGIES, LLC'S RESPONSE TO SPRINT SPECTRUM L.P.'S OPENING BRIEF AND ITS OPENING BRIEF FOR ITS CROSS-APPEAL

_____

PAUL J. ANDRE
LISA KOBIALKA
**KRAMER LEVIN NAFTALIS &
FRANKEL LLP**
990 Marsh Road
Menlo Park, California 94025
Telephone: (650) 752-1700


ANDRÉ J. BAHOU
**Prism Technologies, LLC**
750 Old Hickory Blvd., Ste. 150
Brentwood, TN 37027
Telephone: (202) 802-9515

JONATHAN S. CAPLAN
MARK BAGHDASSARIAN
AARON FRANKEL
CRISTINA MARTINEZ
**KRAMER LEVIN NAFTALIS &
FRANKEL LLP**
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100

*ATTORNEYS FOR PRISM TECHNOLOGIES, LLC*

# CERTIFICATE OF INTEREST

1.    The full name of every party represented by me is:

- Prism Technologies, LLC

2.    The name of the real party in interest represented by me is:

- None.

3.    All parent corporations and any publicly held companies that own 10 percent of the stock of the party or amicus curia represented by me are listed below:

- Prism Technologies, LLC is a wholly owned subsidiary of Prism Technologies Group, Inc., a public company listed on the NASDAQ.

4.    The names of all law firms and the partners or associates who appeared for Prism Technologies, LLC in proceedings before the District Court, or are expected to appear in this Court, are:

- Kramer Levin Naftalis & Frankel LLP: Paul Andre, Jonathan Caplan, Lisa Kobialka, Mark Baghdassarian, Aaron Frankel, Marcus Colucci, Cristina Martinez, Matthew Olinzock, Aakash Jariwala and William Hannah.

- Koley Jessen P.C., L.L.O:  Michael C. Cox, Daniel J. Fischer

- Prism Technologies LLC: Andre J. Bahou

Dated: May 12, 2016                          *s/ Paul J. Andre*
                                             Paul J. Andre

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST .................................................................i

STATEMENT OF RELATED CASES ....................................................1

INTRODUCTION .................................................................................1

JURISDICTIONAL STATEMENT .......................................................5

STATEMENT OF ISSUE ON PRISM'S CROSS-APPEAL....................6

COUNTER-STATEMENT OF ISSUES ON SPRINT'S APPEAL..........6

STATEMENT OF THE CASE................................................................7

STATEMENT OF THE FACTS .............................................................8

      A.    The Inventions of the Asserted Patents......................................8

      B.    The District Court's Construction of an IP
           Network..................................................................................9

      C.    Sprint's Infringing Systems Use an Untrusted IP
           Network................................................................................10

      D.    Prism's Expert James Malackowski Performed a
           Proper Damages Analysis .....................................................12

      E.    Trial and Post-Trial Motions..................................................14

SUMMARY OF ARGUMENT ..............................................................16

STANDARD OF REVIEW ...................................................................18

ARGUMENT .......................................................................................21

I.    THE DISTRICT COURT PROPERLY CONFIRMED THE JUDGMENT
    OF INFRINGEMENT .....................................................................21

      A.    Sprint Waived Any Challenge to the District
           Court's Judgment of Infringement..........................................21

      B.    The Evidence Confirmed the District Court's
           Judgment of Infringement......................................................22

1.  The Backhaul Network is an Untrusted Network ...............................................................22

2.  The Infringing Backhaul Network Meets the Court's Construction of An IP Network .............................25

II.  The District Court Properly Denied Sprint's Request for a New Trial .........32

A.  Sprint Challenges the Admissibility of Prism's Arguments and Testimony Relating to IP Network, Not the Claim Construction ..........................................32

B.  The District Court Properly Allowed Argument and Testimony Relating to an IP Network ................................36

1.  Prism Followed the District Court's Construction for "Public With No Controlling Organization" ......................................................36

2.  Prism Followed the District Court's Construction for "Path to Access" ......................................40

III.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ADMITTING THE AT&T AGREEMENT ................................42

A.  There is No Per Se Prohibition Under Rules 403 or 408 Against the Admission of Settlement and License Agreements ....................................................43

B.  The District Court Fully Considered the Admissibility of the AT&T Agreement .....................................45

C.  Admission of the AT&T Agreement Did Not Violate Rule 403 .....................................................47

1.  The AT&T Agreement is Highly Probative Evidence to the Issue of Damages .....................................47

2.  Sprint Did Not Suffer Undue Prejudice Because Prism Used the AT&T Agreement to Prove Damages, Not Liability ...........................53

IV.  THE DISTRICT COURT PROPERLY ADMITTED PRISM'S DAMAGES ANALYSIS ..............................................................56

A.  Malackowski Tied His Cost-Savings Analysis to the Footprint of the Claimed Invention .....................................57

B.    Prism Based the Cost-Savings Amount on Sprint Financial Data, Industry Studies and the Expert Analysis of John Minor ........................................................... 60

1.    Malackowski Used An Appropriate Proxy to Determine Sprint's Cost Savings ....................................... 61

2.    Minor's Opinion Regarding Cost Savings Was Reliable .............................................................. 65

3.    This Court's Jurisprudence Fully Supports Malackowski's Cost-Savings Analysis ............................. 68

V.    THE DISTRICT COURT PROPERLY CONSIDERED AND DENIED SPRINT'S MOTION FOR A NEW TRIAL ................................................. 70

VI.    PRISM IS ENTITLED TO SUPPLEMENTAL DAMAGES AND ONGOING ROYALTIES ............................................................. 72

A.    The Verdict Form Explicitly Refers to Damages Resulting from Sprint's Past Infringement ................................. 73

B.    The Jury Was Instructed to Award Damages for Sprint's Past Infringement ....................................... 75

C.    The District Court's Response to the Jury's Question During Deliberations Confirms the Award Did Not Include Future Infringement ........................... 76

D.    The Evidence and Expert Opinion Presented at Trial Were Limited to Past Damages ....................................... 77

CONCLUSION ..................................................................... 81

## CONFIDENTIAL MATERIAL OMITTED

Pursuant to Federal Circuit Rule 28(d)(1)(B), Plaintiff-Appellee and Cross-Appellant Prism Technologies, LLC prepared a public version of its brief in which it redacted certain confidential information.  Specifically, the material omitted on pages 3, 7, 12-14, 17, 23-24, 26-27, 29-30, 47-54, 56, and 62 contains references to information that was previously designated confidential by the parties pursuant to the protective order entered in the lower proceedings, sealed in the district court and requires continued confidential treatment in this Court.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
　694 F.3d 1312 (Fed. Cir. 2012) .........................................................50

*Alholm v. Am. Steamship Co.*,
　144 F.3d 1172 (8th Cir. 1998) ...........................................................19

*Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*,
　340 F.3d 1298 (Fed. Cir. 2003) .........................................................37

*Apple Inc. v. Motorola, Inc.*,
　757 F.3d 1286 (Fed. Cir. 2014) .........................................................58

*Apple, Inc. v. Samsung Elecs. Co.*,
　67 F. Supp. 3d 1100 (N.D. Cal. Sept. 8, 2014).............................75, 78

*Astrazeneca AB v. Apotex Corp.*,
　782 F.3d 1324 (Fed. Cir. 2015) .........................................................43

*Barrett v. Rhodia, Inc.*,
　606 F.3d 975 (8th Cir. 2010) .............................................................18

*Bevan v. Honeywell, Inc.*,
　118 F.3d 603 (8th Cir. 1997) .............................................................19

*Buchholz v. Rockwell Int't Corp.*,
　120 F.3d 146 (8th Cir. 1997) .............................................................19

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
　807 F.3d 1283 (Fed. Cir. 2015), *reh'g en banc denied in part*, 805
　F.3d 1382 (Fed. Cir. 2015) ................................................................68

*Cordis Corp. v. Boston Sci. Corp.*,
　561 F.3d 1319 (Fed. Cir. 2009) .........................................................35

*Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*,
　815 F.3d 1314 (Fed. Cir. 2016) .........................................................35

*Epos Techs. Ltd. v. Pegasus Techs. Ltd.*,
766 F.3d 1338 (Fed. Cir. 2014) .......................................................37

*Function Media, L.L.C. v. Google Inc.*,
708 F.3d 1310 (Fed. Cir. 2013) .......................................................34

*Gilbrook v. City of Westminster*,
177 F.3d 839 (9th Cir. 1999), *as amended on denial of reh*'g (July
15, 1999) ...........................................................................................46

*Hanson v. Alpine Valley Ski Area, Inc.*,
718 F.2d 1075 (Fed. Cir. 1983) ...................................................68, 69

*Hohn v. BNSF Ry. Co.*,
707 F.3d 995 (8th Cir. 2013) ...........................................................20

*Kennon v. Slipstreamer, Inc.*,
794 F.2d 1067 (5th Cir. 1986) ........................................................45

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999).........................................................................67

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ...................................................*passim*

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ...........................................48, 50, 60

*McKnight By & Through Ludwig v. Johnson Controls, Inc.*,
36 F.3d 1396 (8th Cir. 1994) ...........................................................72

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
No. 11-CV-5341 YGR, 2014 WL 2854890 (N.D. Cal. June 20,
2014) .................................................................................................61

*Monsanto Co. v. McFarling*,
488 F.3d 973 (Fed. Cir. 2007) .........................................................69

*Moore v. Am. Family Mut. Ins. Co.*,
576 F.3d 781 (8th Cir. 2009) ...........................................................22

*In re MSTG, Inc.*,
675 F.3d 1337 (Fed. Cir. 2012) .......................................................44

*Nutrisoya Foods Inc. v. Sunrich, LLC,*
   641 F.3d 282 (8th Cir. 2011) ............................................................22

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,*
   521 F.3d 1351 (Fed. Cir. 2008) *aff'd*, 449 F. Appx 923 (Fed. Cir.
   2011) ...................................................................................................35

*Odetics Inc. v. Storage Tech. Corp.,*
   185 F.3d 1259 (Fed. Cir. 1999) ........................................................50

*PFS Distrib. Co. v. Raduechel,*
   574 F.3d 580 (8th Cir. 2009) ............................................................19

*Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.,*
   219 F.R.D. 135 (N.D. Iowa 2003) ....................................................45

*Playboy Enter., Inc. v. Chuckleberry Pub., Inc.,*
   687 F.2d 563 (2d Cir. 1982) .............................................................44

*Powell v. Home Depot U.S.A., Inc.,*
   663 F.3d 1221 (Fed. Cir. 2011) .............................................58, 68, 69

*QBAS Co. v. C Walters Intercoastal Corp.,*
   slip op., No. 8:10-00406 (C.D. Cal. May 24, 2011) ..........................61

*Qualley v. Clo-Tex Int'l, Inc.,*
   212 F.3d 1123 (8th Cir. 2000) .....................................................70, 71

*ResQNet.com, Inc. v. Lansa, Inc.,*
   594 F.3d 860 (Fed. Cir. 2010) ...............................................43, 44, 45

*Riles v. Shell Exploration and Production Co.,*
   298 F.3d 1302 (Fed. Cir. 2002) ........................................................69

*Stults v. Am. Pop Corn Co.,*
   815 F.3d 409 (8th Cir. 2016) ............................................................19

*Telecordia Techs., Inc. v. Cisco Sys., Inc.,*
   612 F.3d 1365 (Fed. Cir. 2012) ...............................................73, 74, 75

*Univ. of Pittsburgh of Commonwealth Sys. Of Higher Educ. v. Varian
   Med. Sys., Inc.,* 561 Fed. Appx. 934 (Fed. Cir. 2014) ......................59

*Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*,
    602 F.3d 1325 (Fed. Cir. 2010) ...................................................................34, 42

*VirnetX, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014) ...........................................................50, 51, 65

*WhitServe, LLC v. Computer Packages, Inc.*,
    694 F.3d 10 (Fed. Cir. 2012) .....................................................................*passim*

**Other Authorities**

Fed. R. Civ. Proc. 50 ..............................................................................................14

Fed. R. Evid. 403 ...............................................................................................43, 47

Fed. R. Evid. 408 ..................................................................................................43

# STATEMENT OF RELATED CASES

No other appeal in or from the same proceeding was previously before this Court or any other appellate court. The following related cases involving the same patents in suit are currently pending in the United States District Court for the District of Nebraska:

- *Prism Technologies LLC v. U.S. Cellular Corp.,* Case No. 8:12-cv-125 (D. Neb.)

- *Prism Technologies LLC v. Cellco Partnership d/b/a Verizon Wireless,* Case No. 8:12-cv-126 (D. Neb.)

*Prism Technologies LLC v. AT&T Mobility Inc.,* Case No. 8:12-cv-122 (D. Neb.) (the "*AT&T* Action") and *Prism Technologies LLC v. T-Mobile USA, Inc.,* Case No. 8:12-cv-124 (D. Neb.) (the "*T-Mobile* Action") were also before the United States District Court for the District of Nebraska. The *AT&T* Action was settled by the parties in October 2014. Prism filed a notice of appeal in the *T-Mobile* Action on May 4, 2016.

The District Court consolidated these actions for pre-trial purposes, including for fact and expert discovery, *Markman* proceedings and common summary judgment and *Daubert* motions.

# INTRODUCTION

The jury trial in this case focused solely on one issue – does Sprint's wireless network utilize an Internet Protocol Network ("IP Network"). Sprint did not contest infringement of any other claim element, did not attempt an invalidity defense, and did not provide the jury with any competing damages theory. Instead, Sprint focused its entire arsenal on challenging infringement of a single claim element. The jury weighed the evidence the parties provided, and Sprint lost. With this appeal, Sprint wants to try its case again. The problems with Sprint's "do-over" request are: (1) much of it is based on grounds that were not raised below and thus waived, (2) the jury was provided with substantial evidence to support its *factual finding* of infringement, which Sprint ignores, and (3) Sprint's "legal" arguments are actually factual issues the jury determined, and Sprint's attempt to cloak them in legalese does not support its appeal. The record before the District Court dictates affirmance of the infringement verdict and damages.

As an initial matter, Sprint waived the ability to challenge and seek reversal of the judgment of infringement because it failed to raise in its JMOL Motion any issue raised on appeal. Instead, Sprint only raised a non-infringement argument based on a divided infringement theory that it has now jettisoned on appeal. As a result, Sprint is not entitled to request a reversal of the infringement finding it

seeks in this appeal. Beyond waiver, Sprint's appeal fails on multiple additional grounds.

*First,* Sprint attempts to cast Prism's evidence and the trial testimony of Prism's technical expert relating to the IP Network limitation as an issue relating to claim scope, but that is incorrect. Prism presented the evidence and testimony to the jury, along with the District Court's claim construction, and the jury made a factual finding of infringement based on the evidence. Attempting to transform this factual issue into a legal one, Sprint now argues that Prism did not follow the District Court's construction.

Sprint, however, already fully briefed this argument and the District Court rejected it. Prior to trial, the District Court determined that Prism's arguments and testimony were consistent with the District Court's construction for the IP Network limitation which covers the preferred embodiment of an IP Network – specifically, the Internet. Prism's arguments, testimony and evidence at trial followed this ruling and the District Court's construction. In effect, Sprint makes the nonsensical argument that the District Court did not understand its own construction when deciding this issue. Rather, Sprint has a flawed view of the evidence and IP Network limitation because the Internet – the agreed-upon prototypical example of an IP Network – would not qualify as an IP Network. Such an erroneous result cannot be correct.

*Second*, the District Court did not abuse its discretion in admitting Prism's license and settlement agreement with AT&T Mobility, LLC ("AT&T"). This Court has repeatedly confirmed the admissibility of agreements that result from the settlement of patent litigation, particularly where the same patents are at issue. Sprint initially advocated that Prism's other settlement and license agreements relating to the Asserted Patents were the most probative evidence on damages. After Prism's agreement with AT&T, however, Sprint reversed course, claiming there is a presumption against the admission of such agreements. No such *per se* prohibition exists. Here, the AT&T Agreement is technologically and economically comparable and, as a result, represents a probative and reliable agreement properly admitted into evidence.

*Third*, the District Court properly admitted Prism's damages analysis focused on the cost-savings benefits that Sprint enjoys from the use of the claimed IP Network. Prism's unrebutted trial evidence proved that Sprint saved █████████ ██████ because it used the infringing shared and untrusted IP Network rather than undertaking the cost of implementing the only available non-infringing alternative presented at trial – building a dedicated and trusted IP Network.

Throughout the case, Sprint argued that part of the footprint Prism's invention was the claimed IP Network, but Sprint now ignores that limitation. Furthermore, the cost-savings analysis was premised on Sprint-specific documents

3

and witness testimony, industry studies and the expert opinion of Prism's technical expert who has over thirty years of expertise with the IP Network at issue.

The only issue appropriate for remand is Prism's cross-appeal regarding future royalties. The jury awarded Prism $30 million for Sprint's past infringement through the end of 2014. Under this Court's well-established precedent, Prism must be compensated for ongoing infringement, from 2015 to the end of life for the Asserted Patents because the only evidence is that the jury's award only covers past damages.

Specifically, (1) the parties only presented evidence of past damages; (2) the jury instructions and verdict form only addressed past infringement and damages; and (3) the jury's question and Sprint's answer to that question to the Court during deliberations confirmed that its verdict was limited to past damages. The District Court abused its discretion in denying Prism ongoing royalties from the beginning of 2015 through the life of the Asserted Patents.

For these and additional reasons outlined below, Prism respectfully requests that this Court affirm the judgment of infringement and past damages of $30 million, but reverse and remand for the District Court to award Prism ongoing royalties from 2015 through the life of the Asserted Patents.

# JURISDICTIONAL STATEMENT

Plaintiff-Appellee and Cross-Appellant Prism Technologies, LLC adopts the Jurisdictional Statement set forth by Appellant with the addition that Prism filed a timely notice of appeal on January 5, 2016.  Appx34277-79.

## STATEMENT OF ISSUE ON PRISM'S CROSS-APPEAL

1.      Whether the District Court incorrectly denied Prism's motion for an accounting of damages through trial and ongoing royalties as the prevailing party in a patent infringement action when the jury's award was limited to past damages.

## COUNTER-STATEMENT OF ISSUES ON SPRINT'S APPEAL

1.      Whether Sprint waived any challenge to reversal of the judgment of infringement.

2.      Whether the infringement verdict is supported by a legally sufficient evidentiary basis.

3.      Whether the District Court abused its discretion in denying Sprint's request for a new trial based on Prism's arguments and the testimony of its expert relating to the IP Network limitation of the Asserted Patents.

4.      Whether the District Court abused its discretion in admitting into evidence Prism's damages analysis.

## STATEMENT OF THE CASE

Prism brought patent infringement actions against five wireless carriers – AT&T, Sprint, T-Mobile, U.S. Cellular and Verizon Wireless (collectively, the "Carriers;" and without Sprint, the "Other Carriers").  Prism alleged that the Carriers infringed U.S. Patent Nos. 8,127,345 and 8,387,155.

Prism first proceeded to trial against AT&T, which ended in a license and settlement agreement under which AT&T paid Prism a royalty in the amount of ███████████ (the "AT&T Agreement").

Prism went to trial against Sprint in June 2015.  The jury returned an infringement verdict and awarded Prism $30 million in past damages.  Appx23484-84.  The District Court entered judgment, and subsequently awarded Prism pre- and post-judgment interest.  Appx1, Appx8-13, Appx14-15.  The District Court then denied the parties' various post-trial motions, including Sprint's Rule 50 and 59 motions and Prism's motion for an accounting of damages through trial and ongoing royalty through the life of the patents.  Appx2-6, Appx7, Appx8-13, Appx14-15.

## STATEMENT OF THE FACTS

### A.    The Inventions of the Asserted Patents

The claimed inventions of the Asserted Patents encompass controlling access to protected computer resources and providing those protected computer resources over an untrusted network using an Internet Protocol network, such as the Internet.  Sprint agrees, providing the same statement of the invention in its opening brief.  Dkt. 36 at 7-8.

Richard Gregg, Vice President of Prism, developed these inventions in 1996, when the Internet rapidly emerged as a popular tool for free distribution of information.  Appx26573-74 at 110:6-111:24.  However, using the Internet to distribute protected computer resources, such as proprietary content and services for a fee, posed significant concerns because of the untrusted nature of the Internet. Appx26573-74 at 110:11-111:24.  Then-existing control mechanisms, such as conventional username and password combinations, proved ineffective because they could easily be broken or forgotten and could be shared among multiple users without verifying whether that person was entitled to receive such information. Appx26576-78 at 113:16-115:7.

In view of these concerns and to distribute protected information in a controlled and trusted fashion, companies implemented private/trusted communication architectures.  Appx26573-74 at 110:10-111:6.  While trusted,

such systems were extremely expensive and, as a result, companies sought to save money by using less expensive, shared networks, such as the Internet. *Id.* Notably, one of Prism's first customers, DTN, had used an expensive proprietary satellite network to deliver weather and commodity price data to its subscribers, and approached Prism to develop a way to deliver this data in a controlled fashion over the Internet to save money. *Id.*

Faced with this challenge, Gregg and the other inventors found a way to leverage the Internet and allow companies like DTN to enjoy the cost savings from using a shared network. Appx26578 at 115:8-23. The Asserted Patents disclose systems and methods where client computer devices have unique identity information. Appx110; Appx177; Appx26640-42 at 177:18-179:12. To obtain authorization, the computer sends its identity data to an access server, and the access server forwards that data to an authentication server for validation. *Id.* If the authentication server successfully authenticates the client computer and determines that it is authorized, the system provides protected computer resources to the client computer device over an untrusted network, such as the Internet. *Id.*

**B.** **The District Court's Construction of an IP Network**

A primary dispute during the *Markman* hearing related to whether the construction of an Internet Protocol Network within the phrase "a system for controlling access to protected computer resources provided via an Internet

Protocol Network" (the "IP Network") should be limited to an "untrusted network." Appx2737-39, Appx2771-76. In advocating for its construction, Sprint repeatedly confirmed that Prism's *inventions* were using an untrusted network, such as the Internet, to provide protected computer resources. Appx9700-01 at 31:24-32:1; Appx9701 at 32:12-14; Appx9724 at 55:18-23; Appx18780-83.

Sprint convinced the District Court with these arguments, who adopted Sprint's construction, and ruled that IP Network was "an untrusted network" that uses at least one protocol from the Internet Protocol ("IP") Suite to provide protected computer resources. Appx82. The District Court then defined "untrusted," using the exact description found in the Asserted Patents' specifications, to mean "[i] a public network with no controlling organization, [ii] with the path to access the network being undefined and [iii] the user being anonymous." *Id.* These specifications further explained that the Internet is the primary example of an untrusted IP Network. Appx224 at 3:47-52.

### C.     Sprint's Infringing Systems Use an Untrusted IP Network

Prism proved at trial that Sprint's systems infringe each of the asserted claims. The Infringing Systems are Sprint's 3G, 4G LTE, 4G WiMax, femtocell, picocell and roaming systems. Sprint's expert conceded at trial, as Sprint does on this appeal, that all limitations of the asserted claims had been satisfied except for

the IP Network limitation.  Appx27667-68 at 1204:18-1205:1.  Below is a brief overview of Sprint's infringing systems for context.

Sprint provides wireless data services to its subscribers through its Infringing Systems.  As illustrated below, the Infringing Systems utilize user devices that send unique identity information, along with a request for data services, to access points.  The access points then relay the identity information to Sprint's core network through the Backhaul Network, which makes up the Internet.



The Backhaul Network is the claimed IP Network at issue on this appeal. Rather than build its own private, dedicated controlled backhaul network, Sprint utilizes third-party public networks to transport its data to and from the access

points and Sprint's core network. Most of Sprint's access points[1] use the Internet provided by commercial Internet service providers. Sprint also has agreements with ███████ third-party "Alternative Access Vendors" (AAVs) to use a shared Backhaul Network to connect other access points, like cell towers, to Sprint's Core Network. Appx26926-27 at 463:2-464:4; Appx26943 at 480:9-11; Appx27385 at 922:12-13. These AAVs use networks of sub-contractors and other AAVs to complete these connections and to extend the scope and coverage of the Backhaul Network. Appx29373-74 at 1015:14-1016:5.

Sprint's core network servers determine whether a user device is authentic and authorized to receive data services, and, if so, send the requested protected computer resources through the Backhaul Network to the user device. Appx26734-39 at 271:23-276:12.

### D. Prism's Expert James Malackowski Performed a Proper Damages Analysis

Prism presented at trial James Malackowski, a leading expert on financial analyses and patent damages, to testify regarding damages. To determine a royalty base, Malackowski focused on one of the primary contributions and benefits of the footprint of the claimed invention to determine a royalty base – specifically,

---

[1] There are approximately a million access points, including femtocells and picocells that use the Internet to transport Sprint's data, whereas only approximately forty thousand cell towers that use the AAV Backhaul Network. Appx39964 at 76:19-77:20; Appx27499 at 1036:11-13; Appx27350 at 887:14-19.

Sprint's use of the shared AAV Backhaul Network (*i.e.*, the IP Network limitation).  Appx27233-34 at 770:23-771:10; Appx27235 at 772:5-14.

Based on the invention's footprint, Malackowski determined that Sprint enjoyed substantial cost savings because it used the AAV Backhaul Network, a shared, untrusted network, rather than incurring the more substantial costs of building a private, trusted network.    Appx27230-31 at 767:14-768:17. Malackowski used an apportioned amount of what Sprint pays to use the AAV Backhaul Network as a very conservative proxy of the cost savings Sprint enjoys from using the claimed invention.  Appx27231-32 at 768:14-769:6, Appx27240-42 at 777:12-779:3    He selected this proxy based on Sprint's documents and witnesses, industry studies, and the opinions of Prism's backhaul expert, John Minor, all of which demonstrated that Sprint's actual cost savings would be much more than what Malackowski used, *i.e.*, ***at least two to five times more***. Appx27235-46 at 772:5-783:21, Appx39469-830, Appx39831-33, Appx39905-35.

Malackowski determined Sprint's cost savings to be in the range of ██████ ████████████  for 2012 to 2014 (Sprint only provided data for those years). Appx27220 at 757:20-22.    Sprint did not present any other non-infringing alternative or an alternative amount of its cost savings.  Appx20965 at No. 38; Appx27849-50 at 1386:5-1387:13.

After determining the royalty base using Sprint's cost savings, Malackowski analyzed the *Georgia-Pacific* Factors, and determined that an allocation of 3.5% of the cost savings to Prism and 96.5% of the cost savings to Sprint would be appropriate. This resulted in a damages range between ███████████████████ ██████████████████████████████████████ for February 2012 through December 2014. Appx27221 at 758:2-5.

### E.    <u>Trial and Post-Trial Motions</u>

The *Sprint* trial began on June 15, 2015. Sprint conceded validity and challenged only infringement and damages. After seven trial days, the jury returned a verdict of infringement in favor of Prism and awarded $30 million in damages for the two years of damages. Appx23484-85.

Sprint moved for relief under Fed. R. Civ. P. ("FRCP") 50(a) and (b) (the "JMOL Motion"), but did not raise any of the issues it currently pursues on appeal. Instead, Sprint argued ***only*** that the jury could not find infringement based on a divided infringement theory not raised on appeal. Appx22973-23019; Appx24865-86. The District Court denied Sprint's JMOL Motion and motion for a new trial. Appx2-7; Appx23488-89.

Prism moved for an accounting of damages through trial and for ongoing royalties through the life of the patents because the jury (i) only awarded Prism past damages based on the evidence presented and (ii) was told that Sprint would

not receive a license as part of its damages award.  Appx26108-31.  The District Court denied Prism's motion, finding that the jury had awarded Prism a lump-sum reasonable royalty through the life of the patents.  Appx8-13.

## SUMMARY OF THE ARGUMENT

Sprint's appeal fails on multiple grounds. As an initial matter, Sprint waived the ability to seek reversal of the judgment of infringement because it failed to raise in its JMOL Motion any issue raised on appeal.

Sprint's request for a new trial also fails.

*First,* Prism presented substantial evidence that supports the jury's verdict. Sprint tries to transform a factual issue into a legal one by arguing that Prism did not follow the District Court's construction for the IP Network limitation. Prior to trial, the District Court rejected Sprint's argument, finding that Prism's arguments and testimony followed that construction. Under Sprint's flawed view, the IP Network limitation would not encompass the preferred embodiment of an IP Network (the Internet) leading to an erroneous and incorrect result.

*Second*, the District Court did not abuse its discretion in admitting Prism's agreement with AT&T. This Court's precedent confirms that  settlements are admissible where, as here, the agreement is technologically and economically comparable. In addition to establishing such comparability, Prism properly used the AT&T Agreement for damages, not liability, and therefore its probative value was not outweighed by a risk of unfair prejudice to Sprint.

*Third,* the District Court properly admitted Prism's damages analysis focused on the cost-savings benefits that Sprint enjoys from the use of the claimed

IP Network—part of the footprint of the claimed invention. Prism's unrebutted evidence proved that Sprint saved ████████████ by avoiding the cost of the only available non-infringing alternative. Throughout the case, Sprint argued that the claimed IP Network was part of the footprint of Prism's invention, but now ignores that limitation for purposes of damages.

*Finally*, the only issue appropriate for remand is Prism's cross-appeal regarding future royalties. The jury awarded Prism $30 million for Sprint's past infringement through the end of 2014. Prism must now be compensated for Sprint's ongoing infringement through the life of the patents which were not covered by the award.

## STANDARD OF REVIEW

Sprint's standard of review section incorrectly identifies the *de novo* standard of review for the District Court's denial of Sprint's JMOL Motion and admission of argument and testimony relating to an IP Network. The only standard of review applicable to this appeal is the abuse of discretion standard.

Reversal: Sprint waived its arguments for reversal of the judgment of infringement because Sprint did not raise those issues in its JMOL Motion. Sprint cannot demonstrate that there was any abuse of discretion by the District Court.

New Trial: Sprint does not challenge the District Court's claim construction of IP Network. Instead, Sprint seeks a new trial by challenging whether the facts support the jury's infringement verdict and whether the District Court properly admitted arguments and testimony under its claim construction after denying Sprint's *Daubert*. The abuse of discretion standard applies to those arguments. *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (The Eighth Circuit "will not reverse a district court's ruling on the admissibility of expert testimony 'absent a clear and prejudicial abuse of discretion.'") (quotation omitted).

Denial of a new trial is governed under the law of the applicable regional circuit. The Eighth Circuit reviews such denials for a clear abuse of discretion. Reversal is ***only*** warranted if necessary to prevent a miscarriage of justice, which

simply does not exist here, given, *inter alia,* the substantial evidence in support of the verdict. *Stults v. Am. Pop Corn Co.*, 815 F.3d 409, 414 (8th Cir. 2016).

"When a motion for a new trial is founded on the assertion that the jury's verdict is against the weight of the evidence, the district court's ruling is virtually unassailable on appeal." *PFS Distrib. Co. v. Raduechel*, 574 F.3d 580, 589 (8th Cir. 2009) (internal quotation marks and citations omitted). The appellate court must view "the evidence in the light most favorable to the verdict … [and] will reverse only when there is an absolute absence of evidence to support the jury's verdict." *Id.*

A "miscarriage of justice" does not result whenever there are inaccuracies or errors at trial. *Buchholz v. Rockwell Int't Corp.*, 120 F.3d 146, 148 (8th Cir. 1997). An allegedly erroneous evidentiary ruling only warrants a new trial where "the evidence was so prejudicial that a new trial would likely produce a different result." *Bevan v. Honeywell, Inc.,* 118 F.3d 603, 612 (8th Cir. 1997).

Similarly, a new trial motion based on improper closing arguments should be granted only if the statements are "plainly unwarranted and clearly injurious" and "cause [ ] prejudice to the opposing party and unfairly influence [ ] a jury's verdict." *Alholm v. Am. Steamship Co.,* 144 F.3d 1172, 1181 (8th Cir. 1998) (citations omitted).

Finally, this Court should grant the District Court "wide discretion in admitting and excluding evidence, and its decision [should] not be disturbed unless there is a clear and prejudicial abuse of discretion … [and] that ruling had a substantial influence on the jury's verdict." *Hohn v. BNSF Ry. Co.*, 707 F.3d 995, 1001 (8th Cir. 2013).

# ARGUMENT

## I. THE DISTRICT COURT PROPERLY CONFIRMED THE JUDGMENT OF INFRINGEMENT

Sprint waived the right to challenge and seek reversal of the infringement judgment because the grounds that it raises now were never raised in its JMOL Motion. Further, the substantial evidence Prism presented at trial supports the jury's **_factual finding_** of infringement based on the only limitation Sprint disputed – the IP Network recited in the asserted claims. Recognizing the infirmities of its fact-based arguments on issues the jury decided based upon the substantial evidence, Sprint attempts to disguise its claims as "legal" arguments based on altering portions of the construction for the IP Network limitation.

### A. <u>Sprint Waived Any Challenge to the District Court's Judgment of Infringement</u>

The entirety of Sprint's JMOL Motion was limited to divided infringement. Specifically, Sprint's lone noninfringement argument was that it could not infringe the method claims of the Asserted Patents because the methods required more than one actor, and Prism did not provide any evidence of multiple actors. Appx22969-82. Prism refuted Sprint's JMOL arguments, but such arguments are now moot because Sprint abandoned them in this appeal. Instead, Sprint now argues for the first time that the evidence does not support the jury's verdict and Prism argued and testified inconsistently with the District Court's construction for an IP Network.

Sprint waived these arguments by failing to raise them in its JMOL Motion. *Moore v. Am. Family Mut. Ins. Co.*, 576 F.3d 781, 785 (8th Cir. 2009) ("Where a party fails to make a Rule 50(b) motion in the district court regarding an issue, there is nothing for the court of appeals to review, and we thus lack the power to review the matter."); *Nutrisoya Foods Inc. v. Sunrich, LLC*, 641 F.3d 282, 290 (8th Cir. 2011) (appellate court had no power to review argument that defendant did not raise in its Rule 50(b) motion). Based on this alone, the judgment of infringement should be affirmed.

### B. The Evidence Confirmed the District Court's Judgment of Infringement

Sprint premised its entire noninfringement theory at trial on challenging the IP Network limitation. As the District Court confirmed, Prism demonstrated through Sprint fact witnesses, documents and experts, as well as Prism's own technical experts, that Sprint's Infringing Systems satisfy the IP Network limitation and therefore infringe.

### 1. The Backhaul Network is an Untrusted Network

The preferred embodiment of an IP Network in the Asserted Patents is the Internet. *See, e.g.*, Appx171 at 34:16-19, Appx239 at 34:26-29. The parties agreed at trial that the Internet is an IP Network within the scope of the District Court's claim construction, including a public network with no controlling organization and that the path to access the Internet is undefined. *See* Appx27714

at 1251:13-22 (agreeing that the Internet "would meet the Court's claim construction" of the IP Network limitation). Prism presented the jury with overwhelming evidence showing that the Backhaul Network is the same as or a significant part of the Internet, and thus is an IP Network.

Prism's expert Minor explained, with reference to various Sprint confidential documents, that Sprint uses the Internet as its Backhaul Network to transmit data from many of Sprint's access points to Sprint's core network. *See, e.g.*, Appx36626-46; Appx38701-67; Appx38768-805; Appx26955-58 at 492:8-495:5; Appx26907-18 at 444:4-455:5; Appx26918-24 at 455:6-461:3. Prism used the figure below, reproduced from Sprint's documents, to explain how Sprint uses the Internet. It shows how the Internet is used to connect user devices to Sprint's core network, and notes Sprint's "Internet Backhaul Model":



Appx36631 (highlighting added); Appx25049-50 at 242:1-243:16.

Sprint's witnesses, including its technical expert and two Sprint engineers, conceded that the Internet was used for Sprint's Backhaul Network.  *See, e.g.*, Appx39965 at 82:14-82:19 ("[F]emtocells establish an IPSec tunnel through the Internet to get back to the Sprint network."); Appx27499-500 at 1036:22-1037:15; Appx39954-55 at 126:22-127:18; Appx39956-57 at 170:22-171:07; Appx27561 at 1098:6-13; Appx27562 at 1099:2-5; Appx27699-700 at 1236:15-1237:14; Appx27700-01 at 1237:15-1238:9.

Minor also testified that the AAV provided Backhaul Network Sprint used makes up the Internet and referenced multiple documents supporting his opinion. For example, Minor presented a publication describing the Internet (Appx38809), as well as various industry documents (*see, e.g.*, Appx38145-65; Appx38428-29) proving this fact.  *See, e.g.*, Appx26882-Appx26891 at 419:7-428:24; Appx26897-98 at 434:24-435:1 ("Well, the backhaul is the Internet. It's not the entire Internet but it's a smaller subset."); Appx26896-Appx26905 at 433:25-442:11; Appx26932-37 at 469:14-474:15; Appx26949 at 486:21-23 ██████████████████████

███████████████████████████████████████████████████

Appx38146; Appx38428.  Sprint's technical expert, Melvin Ray Mercer, agreed with Minor, conceding that the physical network over which all of Sprint's data flows is part of the Internet.  Appx27691-92 at 1228:23-1229:12 (agreeing that, "at

times" the AAVs "use the same fiber-optic cable for … their Internet as they do for … their backhaul transport services").

It is axiomatic that if the Internet is an IP Network, and the Backhaul Network makes up the Internet, then the Backhaul Network is an IP Network. Sprint did not refute this simple logic at trial, and it cannot in this appeal.

### 2. The Infringing Backhaul Network Meets the Court's Construction of An IP Network

In addition to showing that Sprint's Backhaul Network is the Internet or a part of the Internet, Prism presented substantial evidence to demonstrate that the infringing Backhaul Network meets the Court's construction of the IP Network. Despite admitting that it used the Internet as its Backhaul Network, Sprint's primary defense at trial was that it did not use a public untrusted network, pursuant to the Court's construction of IP Network, but used a private trusted network. Sprint's confidential documents refuted this defense because they (1) showed the Internet was Sprint's Backhaul Network; (2) explicitly stated that its Backhaul Network is "untrusted" and "shared" with others (*i.e.*, not private and controlled), and (3) explicitly referred to its Backhaul Network as an IP Network, as shown in the figures below.

**THE INTERNET AS SPRINT'S BACKHAUL NETWORK**



Appx38789 (highlighting added); Appx27389-95 at 926:18-932:5.

**Sprint Admitting Its Backhaul Network is "Untrusted" and "Shared"**

Appx39033-34 (highlighting added); Appx26927-32 at 464:9-469:12; Appx26949

at 486:2-16; *see also* Appx39041 at 3.1.4.3 AAV Backhaul Links.

**Sprint Referring to Its Backhaul Network as an IP Network**



Appx35326 (highlighting added).

In this appeal, Sprint rehashes some of the same factual arguments it unsuccessfully presented to the jury at trial regarding its Backhaul Network – *i.e.*, the Backhaul Network does not satisfy the "public with no controlling organization" or "path to the network is undefined" portions of the IP Network claim construction. The jury rejected these arguments given the substantial evidence that Sprint's Backhaul Network is shared and does not have a controlling

organization, and that the path to this massive network is undefined. *See infra* at 24-26. While Sprint attempts to recast these factual findings as legal disputes concerning scope of the claim construction, Sprint is really arguing that the jury got the facts wrong. As shown herein, the jury had substantial evidence for it verdict, and Sprint's attempts to reinvent these factual issues does not support its appeal given this evidence.

<u>Public with no controlling organization</u>: Prism provided the jury with substantial evidence that Sprint's Backhaul Network is shared and did not have a controlling organization. Sprint conceded that the Internet is a public (*i.e.*, shared) network that does not have a controlling organization. Appx27637-68 at 1174:24-1175:9 (Sprint engineer testifying that the Internet does not have a controlling organization because "***the Internet is built of many, many networks. Some of those are public and some of those are private, but nobody controls the entirety.***") (emphasis added); Appx27742-43 at 1279:18-1280:7.

Moreover, Sprint admitted that it uses the Internet for its Backhaul Network. *See, e.g.*, Appx39965 at 82:14-82:19 (Q. So femtos do use public Internet to connect to Sprint's network; is that correct? [Sprint (English): … Femtocells establish an IPSec tunnel ***through the Internet to get back to Sprint's network…***") (emphasis added); Appx39954-55 at 126:22-127:18 (femtocells connect from a person's home to Sprint through the public Internet). Sprint stipulated that it had

950,000 femtocells as of 2012. Appx27499 at 1036:11-13. Thus, the overwhelming majority of Sprint's access points (approximately a million) used a Backhaul Network (the Internet) that Sprint admits infringes the IP Network limitation. Accordingly, Sprint cannot credibly come to this Court and now argue that the jury did not have substantial evidence to find that Sprint's Backhaul Network meets the portion of the claim construction regarding "public with no controlling organization," nor can it argue that the jury misapplied the construction to the facts when Sprint explicitly admitted to such a finding.

Furthermore, Sprint's confidential documents confirmed Sprint's AAV provided Backhaul Network is "untrusted" because it has no controlling organization and is shared (*i.e.*, not private). Appx39033-34



(emphasis added). Sprint's witnesses also admitted that its AAV provided Backhaul Network was untrusted and and thus was public with no controlling organization. *See* Appx27465-66 at 1002:17-1003:24; Appx27476-78 at 1013:7-1015:13

Appx39041; Appx38512; Appx38555. Prism also presented the deposition testimony of a Sprint engineer who confirmed that Sprint does not own or control

███████ of AAVs that provide their networks for Sprint's Backhaul Network that collectively make up the accused IP Network (along with various subcontractors).  *See, e.g*., Appx39967-68 at 147:25-148:04 ("Sprint doesn't have any control or influence over the AAV's network"); Appx26926-27 at 463:20-464:4; Appx26947-48 at 484:8-485:5; Appx39964 at 60:05-60:10; Appx39965 at 91:11-91:22; Appx27480 at 1017:20-25.  Even Sprint's non-infringement expert Mercer agreed that, "on a collective basis" "there is no controlling organization" over the AAV provided Backhaul Network.  Appx27744 at 1281:8-13.

Prism presented additional evidence to demonstrate the untrusted nature of the infringing Backhaul Network because it is public and shared among many users, including other wireless carriers.  S*ee, e.g*., Appx27746-47 at 1283:24-1284:2 (Sprint's expert agreeing that "AAVs have multiple … customers and all those customers share the exact same fiber"); Appx27747 at 1284:12-15 (agreeing that "the Ethernet networks run many people's customers through the exact same … physical pipe");  Appx27748 at 1285:10-14 ("I don't know how many pieces of fiber there are but it's certainly is the case that any one fiber could have information from multiple customers");  Appx38145-66;  Appx38167-312; Appx38313-427; Appx38428-29; Appx38430-59; Appx39025-107.  Both parties' experts agreed on this point.  Appx26893-94 at 430:17-431:8; Appx26912-13 at

449:18-450:4; Appx26927-28 at 464:9-465:10; Appx26933-37 at 470:3-474:12; Appx26942-49 at 479:25-486:23.

For these reasons, the jury had more than substantial evidence to support its verdict that this portion of the IP Network construction was satisfied.

The paths to access the network are undefined: Prism also presented the jury with substantial evidence confirming that the paths to Sprint's Backhaul Network are undefined, and that this portion of the IP Network claim construction was satisfied. First, as noted above, Sprint admitted that the Internet is an IP Network and the path to access the Internet is undefined. Appx27676 at 1213:8-11 (agreeing that the claim construction for Internet Protocol network includes the Internet); Appx27677 at 1214:19-23; Appx27754 at 1291:6-8 (agreeing that the Backhaul Network can be accessed from "more than a million" different locations"). Sprint further admitted that it uses the Internet for its Backhaul Network. Appx39965 at 82:14-82:19; Appx27499-500 at 1036:22-1037:15; Appx39954-55 at 126:22-127:18; Appx39956-57 at 170:22-171:07; Appx27561 at 1098:6-13; Appx27562 at 1099:2-5; Appx27699-700 at 1236:15-1237:14; Appx27700-01 at 1237:15-1238:9. Thus, Sprint admits that the paths to access its Backhaul Network are undefined.

Additionally, Minor explained that the paths to access Sprint's Backhaul Network are undefined because the network can be reached from countless cell

31

towers, femtocells, picocells and users' homes and offices. Appx35293-503; Appx26894-95 at 431:9-432:14; Appx26949-54 at 486:24-491:8; Appx35304. A Sprint engineer and its technical expert confirmed Minor's testimony that the accused Backhaul Network could be reached from millions of different paths – i.e., that there is no defined path to access the network. Appx27353 at 890:19-23 (agreeing "there are hundreds of thousands, if not millions, of points that a path to the Sprint core network can begin"); Appx27754 at 1291:6-8 (agreeing that Sprint's Backhaul Network can be accessed from "millions of different locations"). Thus, Prism demonstrated that this portion of the construction for an IP Network had been satisfied, and substantial evidence supports the jury's factual findings.

## II. THE DISTRICT COURT PROPERLY DENIED SPRINT'S REQUEST FOR A NEW TRIAL

As a result of Sprint's waiver and the substantial evidence of Sprint's infringement, Sprint is left to seek a new trial. Sprint's basis for its request is that Prism's arguments and testimony purportedly altered the claim construction for an IP Network. Under this Court's precedent, the District Court did not abuse its discretion in admitting Prism's arguments and supporting expert testimony.

### A. Sprint Challenges the Admissibility of Prism's Arguments and Testimony Relating to IP Network, Not the Claim Construction

Sprint is not challenging on appeal, and did not challenge during trial, the District Court's construction for an IP Network. Sprint affirmatively states on

appeal that "the district court authoritatively and correctly construed the limitation 'Internet Protocol network' …" Dkt. 36 at 36. Sprint now argues, however, that the claim construction was altered during trial. Sprint's actual disagreement is with how the jury viewed the evidence and applied the evidence to the District Court's claim construction for its ***factual finding*** that Sprint infringed the IP Network limitation.

Prior to trial, Sprint filed a *Daubert* motion seeking to exclude Minor from testifying that Sprint's Infringing Systems satisfied the IP Network limitation because he purportedly sought to alter the construction. Sprint repeats this failed argument on appeal. In rejecting those arguments, the District Court found Minor's testimony and Prism's associated arguments consistent with the IP Network construction. Appx94. In particular, the District Court determined that Minor's interpretation did "not stand inapposite of the *Markman* hearing." Appx94. Sprint implausibly argues, in effect, that the District Court misunderstood its own construction in finding that Prism's arguments are within the scope of the claim construction.

Similar to recent cases before this Court, Sprint's actual complaint is about attorney argument and the evidence, and not about the scope of claim construction. Where, as here, the parties "did not bring a dispute about claim scope to the district court's attention prior to the close of evidence" and "did not invite the jury to

choose between alternative meanings of technical terms or words of art or to decide the meaning of a particular claim term," the issue is a "question of improper attorney argument, not an *O2 Micro* problem" as Sprint claims. *Function Media, L.L.C. v. Google Inc.*, 708 F.3d 1310, 1326 (Fed. Cir. 2013) (citing and quoting *Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1334 (Fed. Cir. 2010) (holding that dispute regarding appropriateness of arguments made to jury concerning how a system operated did not present an issue of claim construction).

Here, as in *Function Media* and *Verizon,* Sprint's challenges relate to attorney argument and Minor's opinions relating to the IP Network Limitation, and not to claim scope. There was no dispute on claim construction for the jury to resolve because the District Court instructed the jury on the very construction that Sprint advocated for the IP Network limitation and there is no evidence that the jury used any other construction to determine infringement. Appx23463-64.

That Sprint never sought clarification or a limiting instruction during trial regarding claim scope based on any of Prism's arguments confirms that the jury was never privy to any dispute over claim construction of this term. Sprint never raised any issue after Prism's opening argument, during the course of Minor's testimony or during or after Prism's closing arguments. Sprint did not object because Prism did not actually inject a new claim construction into the case.

To try to trump up a claim construction dispute where none exists, Sprint relies on inapposite case law, such as *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.* and *Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.* In both cases, the district courts declined to construe disputed claim terms, resulting in the parties presenting competing arguments regarding the meaning and scope of claim terms to the jury. 521 F.3d 1351 (Fed. Cir. 2008), *aff'd*, 449 F. Appx 923 (Fed. Cir. 2011) and 815 F.3d 1314 (Fed Cir. 2016).

Here, by contrast, the District Court construed and adopted Sprint's construction of IP Network. The District Court took the further step of determining that Minor's opinion regarding the IP Network limitation fell within the scope of that construction, stating Minor's opinion did "not stand inapposite of the *Markman* hearing." Appx94. Moreover, unlike in *O2 Micro* and *Silver Spring*, where the jury considered the scope of the claim terms, the District Court instructed the jury on the proper construction for the IP Network limitation and explicitly told the jury to only use the one the District Court had already determined was appropriate. 521 F.3d at 1362 and 815 F.3d at 1319, respectively. Sprint also erroneously relies on *Cordis Corp. v. Boston Sci. Corp.*, where the infringer's arguments contradicted the district court's construction, which is not an issue here. 561 F.3d 1319, 1337 n.16 (Fed. Cir. 2009).

For these reasons, the issue on appeal relates to argument and the supporting evidence and the District Court's decision is reviewed under an abuse of discretion standard.

### B. The District Court Properly Allowed Argument and Testimony Relating to an IP Network

The District Court did not abuse its discretion in allowing Prism to make its arguments relating to the "public with no controlling organization" and "path to access" portions of the IP Network limitation construction. As explained below, Prism followed the District Court's construction of these elements.

### 1. Prism Followed the District Court's Construction for "Public With No Controlling Organization"

Sprint contends that Prism inserted the word "single" into the phrase "no controlling organization" to make it "no single controlling organization," improperly changing the scope of the District Court's construction. That is incorrect. Much like the Internet has no controlling organization, Sprint's Backhaul Network likewise has no controlling organization.

As Prism's evidence demonstrated and Minor explained at trial, the infringing IP Network is the Backhaul Network used within Sprint's Accused Systems to transport data to and from its customers and its core network. For most Access Points, Sprint admits the Backhaul Network is the Internet. *See supra* at Section I.B.1. For Sprint's cell tower Access Points, the Backhaul Network is

made up of the networks from numerous AAV entities, also part of the Internet, that Sprint has contracts with to provide their networks to transport the data of Sprint's customers, and these AAV networks make up Sprint's Backhaul Network, in the aggregate. Appx26906 at 443:1–5; Appx26926-29 at 463:2-466:21; Appx26937 at 474:13-15; Appx26943 at 480:3–15; Appx26949 at 486:17-23. Because none of Sprint's AAVsor subcontractors control any other AAV's backhaul network, and because nobody controls the Internet, there is no controlling organization for Sprint's accused Backhaul Network. Appx26947-48 at 484:22-485:5, Appx26948-49 at 485:23-486:1.

Sprint nevertheless argues that because each individual AAV owns and controls its own network segments, the entirety of Sprint's Backhaul Network is controlled and private and therefore is not an IP Network. Dkt. 36 at 36-37. However, Sprint's view would result in the conclusion that the Internet would not satisfy the IP Network limitation. Because the Internet is a preferred embodiment of an IP Network in the specification of the Asserted Patents, this conclusion is wrong as a matter of law. *Epos Techs. Ltd. v. Pegasus Techs. Ltd*., 766 F.3d 1338, 1347 (Fed. Cir. 2014) (finding district court's construction incorrect because it read out preferred embodiments) citing *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1308 (Fed. Cir. 2003) ("[A] claim construction that

excludes a preferred embodiment … is rarely, if ever correct and would require highly persuasive evidentiary support.").

Because the Internet is a network made up of many networks, including the AAV's networks, they are identical to and the same as the IP Network that Sprint uses for its Backhaul Network. As Minor explained to the jury, and Sprint did not dispute, the Internet is a network of networks. Appx26893-94 at 430:13-431:8; Appx26912-13 at 449:18-450:4; Appx26947-49 at 484:22-486:23. And while each network of the Internet is privately owned and controlled by an individual organization, there is no organization that controls the many networks that comprise the Internet network. Appx26882-84 at 419:21-421:9; Appx26893-94 at 430:13-431:8. *See also* Appx26882-84 at 419:7-421:9; Appx26893-94 at 430:13-431:8 (Minor explaining based on his experience and support from multiple sources that while the individual segments of the Internet are controlled, the Internet itself is not controlled by any organization).

The District Court properly rejected Sprint's view, finding that, "Minor's interpretation of the control element of untrusted does not stand inapposite of the *Markman* hearing" and was consistent with the preferred embodiment of an IP Network – the Internet (where each of the network of networks is individually controlled but there is no controlling organization for the aggregate of those

networks). Appx94. Based on this, the District Court concluded that the control requirement was an issue for the jury to decide. Appx91-92; Appx94.

Sprint focuses its appeal on Minor's use of the word "single" one time in the context of answering a question directed to whether the AAV provided Backhaul Network constitutes "public networks," but that solitary answer does not amount to a change in claim construction position. Appx26948-49 at 485:15-486:1. Minor provided extensive testimony explaining why the "public with no controlling organization" element had been satisfied without reference to the word "single." Appx26942-43 at 479:17-480:6; Appx26946-48 at 483:18-485:14. Thus, Minor was not informing the jury of a new construction, but rather faithfully applied the claim construction to the facts and his opinion that Sprint's Backhaul Network satisfied the IP Network limitation.

In particular, Minor, in answering a question as to whether the Backhaul Network is shared, explained that "there's not a controlling organization" for the Backhaul Network because "when we have multiple networks at play, there is no controlling organization over the end-to-end path." Appx26948 at 485:17-24. To further explain why there was no controlling organization, he testified that the AAVs "each control their own piece but there's not a single controlling organization." Appx26948-49 at 485:24-486:1. Minor's statement was consistent with his earlier testimony in the trial that there is no controlling organization for

the infringing Backhaul Network, and, when viewed in that context, does not represent a new claim construction position.

### 2. Prism Followed the District Court's Construction for "Path to Access"

Sprint contends that Prism changed the construction for "path *to access* the network" to "path *through* the network." Sprint again omits the testimony and documentary evidence Prism presented at trial, which faithfully adhered to the District Court's construction.

Specifically, Minor explained that the path to Sprint's Backhaul Network is undefined because the network can be accessed from any number of locations:

> Q. … "the path to access the network being undefined."
> Can you describe what that's referring to?
>
> A. … *The path to access the network, this untrusted network is undefined in the sense that I can connect to the network if I'm at your home and you're using the Internet.* I can go to my home or office and use the Internet. I can actually connect to -- if I were a Sprint subscriber connect to the Internet or connect to the network as I travel around. *It will be a different path each time I switch or re-register to another cell site.*

Appx26894 at 431:9-25 (emphasis added); *see also* Appx26895 at 432:1-14; Appx26913 at 450:5-17; Appx26950-54 at 487:6-491:8.

Sprint cites to a single instance where Minor used the word "through" to support its contention that Minor changed the construction. Dkt. 36 at 45-46. However, Minor's testimony read in context explains how the path *to access* the

network is undefined because the path *to access* the untrusted network changes as a user moves to different cell sites:

> Q. And during Dr. Lyon's testimony yesterday, he … used the example of streaming music. Did you prepare a demonstrative about a road trip from Seattle to Phoenix? …could you explain what's going on to the jury.
>
> A. … imagine that you're streaming Pandora perhaps. You're streaming music, and you're at home, and you get in the car and begin to drive cross-country. … [A]s long as you have coverage, as long as you have service, your music streaming will continue.
>
> And as you drive down to San Francisco, it's a long road trip, you're going to traverse a lot of cell sites but this is representative. ***Your -- your path to access the network is going to change. You'll change cell sites and the path through the network to access the core [network] changes as you travel on down to Phoenix.*** You'll notice that.
>
> And that path across the network will change depending upon whether a piece of fiber-optic cable has been cut or whether there might be a traffic load of some sort or whether a piece of equipment has failed or been taken out of service by the AAV. That path might change even more.
>
> So that's what we talk about when we talk about the – the definition of the ***path to access*** the network.

Appx26950-51 at 487:24-488:25 (emphasis added). As shown above, Minor's use of the word "through" referred to the fact that as a user's path ***to access*** the network changes, its path through the network also changes.

Moreover, this out of context snippit of testimony is of no moment because Minor's testimony proved that the Infringing Systems satisfy both "a path to access" and "a path through" the network. The District Court properly denied Sprint's motion for a new trial in view of the weight of the evidence supporting infringement based on an undefined path to access the network. In *Verizon Servs. Corp.*, this Court affirmed a district court's denial of a motion for a new trial under similar circumstances in which a plaintiff singled out "snippets of testimony by [defendant's] witnesses and of argument by counsel," explaining that the case had been "vigorously litigated, with extensive testimony, physical exhibits, and argument from both sides" resulted in "thousands of pages of trial testimony." 602 F.3d at 1335. Thus, Sprint's argument is without factual or legal merit.

## III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ADMITTING THE AT&T AGREEMENT

The District Court did not abuse its discretion in admitting the AT&T Agreement after fully considering the admissibility of Prism's prior license and settlement agreements on multiple occasions. Notably, Sprint's current position on appeal of a presumptive prohibition on the admission of settlement licenses is inconsistent with its positions taken before the District Court. Specifically, prior to the AT&T Agreement, Sprint advocated for the admissibility of Prism's other settlement and license agreements, and then subsequently sought to prohibit only the admission of the AT&T Agreement. Sprint cannot satisfy its high burden for a

new trial because there was no legal error in admitting the AT&T Agreement and no evidence that the admission of this agreement was so prejudicial that its exclusion would have produced a different verdict.

### A. There is No Per Se Prohibition Under Rules 403 or 408 Against the Admission of Settlement and License Agreements

There is no *per se* prohibition under either Fed. R. Evid. 403 or 408 against the admission of settlement licenses for a damages analysis. *Astrazeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1336 (Fed. Cir. 2015) ("[T]here is no per se rule barring reference to settlements simply because they arise from litigation.") (citations omitted). This Court's precedent establishes that settlement licenses are admissible for purposes of a hypothetical negotiation analysis where the agreement is technologically and economically comparability. *Astrazeneca AB*, 782 F.3d at 1335 (affirming use of settlement licenses for damages); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870-72 (Fed. Cir. 2010) ("This Court observes as well that the most reliable license in this record arose out of litigation.").

Prior to the AT&T Agreement and in Sprint's *first Daubert* motion, Sprint advocated for the use of Prism's other settlement agreements, arguing that they are "reliable marketplace evidence of the value of the patents-in-suit." Appx11173-75. After Prism settled with AT&T, Sprint reversed course in its *second Daubert* motion and subsequent motion *in limine* and sought to prohibit the admission of only the AT&T Agreement, arguing AT&T Agreement is "not probative of the

market value of the invention".  Appx17653-54.  The District Court properly rejected Sprint's inconsistent positions regarding settlement license agreements.

Rule 408 similarly does not prohibit the admission of the AT&T Agreement as Sprint contends.  Rule 408 prohibits evidence of settlement agreements only "***when offered against a party thereto***."  FRE 408 Advisory Committee's note (emphasis added).  Sprint is not a party to the AT&T Agreement, and therefore Rule 408 is inapposite.

Sprint also fundamentally misreads this Court's decisions *In re MSTG, Inc.* and *LaserDymanics* as they relate to Rule 408.  Dkt. 36 at 54-55.  In both cases, this Court explained that Rule 408 prohibits the admission of underlying settlement ***offers or negotiations***, while recognizing "that settlement agreements can be pertinent to the issue of reasonable royalties."  *In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012) (finding ***settlement negotiations*** inadmissible under Rule 408, but ***settlement licenses*** can be used for damages).

Sprint relies on three inapposite and outdated (some by more than two decades) cases.  Dkt. 36 at 56-57.  These cases pre-date *ResQNet.com*, which affirmed the admissibility of settlement licenses.  Two cases do not even involve damages relating to patent infringement. *See Playboy Enter., Inc. v. Chuckleberry Pub., Inc.*, 687 F.2d 563 (2d Cir. 1982) (1982 trademark preliminary injunction

action); *Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067 (5th Cir. 1986) (1986 product liability action); *Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135, 144 (N.D. Iowa 2003) (2003 district court opinion regarding admission of settlements against prior defendants).

**B.** **The District Court Fully Considered the Admissibility of the AT&T Agreement**

Contrary to Sprint's claim that the District Court admitted the AT&T Agreement "without analysis," the District Court considered and ruled on numerous motions preceding its denial of Sprint's motion *in limine*. Dkt. 36 at 2, 23, 47.

For example, the District Court fully considered Sprint's arguments when it rejected Sprint's attempt to preclude Malackowski from supplementing his expert report with an opinion regarding the AT&T Agreement. Appx13382. In opposing that motion, Sprint argued the AT&T Agreement is not probative of a reasonable royalty under *LaserDynamics*. Appx13309-10. In finding the AT&T Agreement relevant, the District Court relied on its detailed analysis regarding the relevance and admissibility of Prism's prior license with Research In Motion (the "RIM Agreement"). Appx13382 citing Appx13095.0002-.0006; Appx18828-29. In its analysis of the RIM Agreement, the District Court carefully analyzed the comparability of prior settlements that must be performed under *LaserDynamics* and *ResQnet*, and concluded that "[i]n reviewing the history of Prism's settlements,

45

… the Court finds that the RIM agreement is the most reliable license in the record" because of the "similarity in business models" between a wireless carrier and RIM. Appx13095.0002-.0006; Appx18828-28. Consistent with these rulings, the District Court rejected Sprint's motion *in limine* to exclude the AT&T Agreement. AppxAppx17652-57, Appx13309-10, Appx23903-05; Appx19351-19363.[2]

Separately, Sprint waived its objection under Rule 408 because it failed to raise it to the District Court. Sprint's motion *in limine* only sought to exclude the AT&T Agreement under *LaserDynamics* and Rule 403. Appx19351-52. Sprint's only reference to Rule 408 related to excluding the negotiations underlying the AT&T Agreement, not the license itself. Appx19357 at n.9. Sprint also did not object to the AT&T Agreement based on Rule 408 in its pre-trial objections to Prism's exhibits or at any time during trial. Appx20504 at TX550. Accordingly, Sprint waived any challenge under Rule 408. *Gilbrook v. City of Westminster*, 177 F.3d 839, 859 (9th Cir. 1999), *as amended on denial of reh'g* (July 15, 1999)

---

[2] With respect to the AT&T Agreement, the District Court considered four separate rounds of briefing totaling well over 100 pages and nearly two hours of oral argument, which resulted in four different decisions. Appx13106-07, Appx13110-12; Appx13294-13297, Appx13300-04, Appx13309-10; Appx13327-.0027; Appx13349-57; Appx13373.0021-.0031; Appx13379-85; Appx17634-44, Appx17647-57; Appx18743-69; Appx19351-19363; Appx19893-909; Appx20252-71; Appx21143-21151; Appx95-101; Appx105; Appx23876-907; Appx28990-29021; Appx4-6.

(defendants waived Rule 408 objection by only objecting on basis of relevance and hearsay and trial).

### C.    Admission of the AT&T Agreement Did Not Violate Rule 403

Sprint is not entitled to a new trial under Rule 403 because the District Court did not abuse its discretion in finding that the probative value of the AT&T Agreement is not substantially outweighed by the risk of unfair prejudice to Sprint.

### 1.    The AT&T Agreement is Highly Probative Evidence to the Issue of Damages

As part of his *Georgia-Pacific* analysis, Malackowski evaluated the AT&T Agreement as one of Prism's eleven prior settlement licenses.  Appx27256-57 at 793:17-794:4.  He explained to the jury Prism's prior settlement agreements and how he and took into account the circumstances of each agreement.  Appx27247-49 at 784:16-786:11.  Based on this evaluation, Malackowski concluded that the AT&T Agreement was the most technologically and economically comparable of Prism's prior licenses because the agreement involved ███████████████████ ███████████████████████████████████ and Sprint is a wireless carrier, like AT&T, that uses the claimed invention repeatedly and continuously.  Appx27248-50 at 785:14-787:18; Appx27254 at 791:21-24.  Malackowski contrasted the AT&T Agreement with Prism's other settlement licenses with entities that had one time or limited use of the claimed inventions for software applications.  Appx27252-53 at 789:17-790:16.

Further, the AT&T Agreement is nothing like the agreement excluded in *LaserDynamics*.  Dkt. 36 at 51-52.

*First*, the AT&T Agreement is not a ████████████ from which the value attributable to the asserted patents cannot be determined.  Dkt. 36 at 52.  ████

████████████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

Appx39456 (emphasis added);  *see also* Appx27150 at 687:10-22 (Prism explaining that ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████.  The AT&T Agreement further specified that Prism ██████████████████

████████████████████████████████████████████████████████████

Appx39546.  Thus, the AT&T Agreement bears no resemblance to the ██████

licenses in *LaserDynamics* or *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1328-29 (Fed. Cir. 2009) because the AT&T Agreement, unlike the licenses in those cases, ████████████████████████████████████

Sprint makes conflicting arguments about Prism's settlement license agreements, revealing that its arguments have nothing do with the admissibility of such evidence.  ████████████████████████████████████████████

████████████████████████████  Thus, simply because the AT&T Agreement

████████████████████████████████ does not render it inadmissible, particularly

where Prism's other settlements, like Prism's RIM agreement which Sprint relies

upon, also ████████████████████████████. Appx27810 at 1347:6-17,

Appx27812 at 1349:5-7, Appx39169.

Moreover, Prism and Malackowski explained that the ██████████████

█████████████████████████████████████████████████████████████

and that was a common practice in resolving patent disputes. Appx27152-53 at

689:18-690:18, Appx at 27197-98 at 734:21-735:2, Appx27251-52 at 788:21-

789:12. An e-mail exchange between Prism and AT&T confirmed as much.

Appx39980 ██████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████

Malackowski also explained to the jury that Prism's patents other than the

common Patents-In-Suit asserted against AT&T and Sprint were for non-

comparable technologies, such as videogames, manufacturing semiconductor

chips, electronic banking and biotech, and were technology unrelated to the

Asserted Patents. Appx27251 at 788:14-20, Appx27292-94 at 829:13-831:9.

Gregory Duman, Prism's President and CFO, further confirmed that ██████████

█████████████████████████████████████████████ although Prism had a

████████████████████████████████████████ Appx27152-

53 at 689:18-690:12.  Thus, Prism only ████████████████████████████

████████████████████  *Id.*

 *Second*, the AT&T Agreement is admissible even though it was executed

after the hypothetical February 28, 2012, negotiation date.  Dkt. 36 at 51.  "Factual

developments occurring after the date of the hypothetical negotiation can inform

the damages calculation."  *Lucent Techs., Inc.*, 580 F.3d at 1334; *Odetics Inc. v.*

*Storage Tech. Corp.*, 185 F.3d 1259, 1276-77 (Fed. Cir. 1999) (the hypothetical

negotiation "does not require the exclusion of post-infringement evidence.")

(citation omitted).  Such agreements are admissible as long as they are, like the

AT&T Agreement here, "sufficiently comparable to the hypothetical license at

issue in suit."  *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir.

2014) (affirming admission of license executed three years after the hypothetical

negotiation); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312

(Fed. Cir. 2012) (affirming admission of license agreement that post-dated the

hypothetical negotiation by two years).

 Moreover, *LaserDynamics* did not find that a license was inadmissible solely

because it was executed after the hypothetical negotiation or shortly before trial.

Rather, the *LaserDynamics* Court explained that the parties failed to consider

twenty-nine other licenses to the asserted patents, most of which were not

settlements of litigation and were, therefore, more reliable evidence of what the parties would have agreed to at the hypothetical negotiation. *LaserDynamics, Inc.*, 694 F.3d at 78. Here, all of Prism's prior licenses resulted from settlements of litigations and therefore the AT&T Agreement is not somehow less reliable than Prism's other settlement agreements. Given its technological and economic comparability, it is certainly reliable and relevant to the hypothetical negotiation with Sprint and it was for the jury to decide which agreements were most probative to the damages analysis.

As held in *VirnetX*, there is no abuse of discretion when a district court admits a license that "bear[s] a close[] relationship to the hypothetical negotiation that would have occurred," notwithstanding that there may "undoubtedly [be] differences between the licenses at issue and the circumstances of the hypothetical negotiation." *VirnetX,* 767 F.3d at 1330-31. These differences included the very arguments Sprint raises regarding the AT&T Agreement, such as execution after the hypothetical negotiation date, ███████████████████████████████ and a claim that the royalty rate did not reflect what the parties would have agreed to at the time of hypothetical negotiation. *Id.* at 1330. This Court in *VirnetX* found that such differences are issues of fact and "[t]he jury was entitled to hear the expert testimony and decide for itself what to accept or reject." *Id.* at 1331 (citation omitted).

In addition, Sprint identified no differences to either the "technological or financial landscape" considered in *LaserDynamics* that would, on the one hand, justify permitting Prism's licenses executed two years prior to the hypothetical negotiation (for example, the RIM Agreement), but, on the other hand, lead to the exclusion of the AT&T Agreement simply because it was executed two years after the hypothetical negotiation. *LaserDynamics*, 694 F.3d at 78.

Finally, Sprint's damages expert, Scott D. Hampton, presented the jury Sprint's view regarding the degree of comparability between the AT&T Agreement and the hypothetical negotiation. In particular, he testified regarding the amount of the AT&T Agreement compared to Prism's prior licenses (Appx27809-12 at 1346:22-1349:4);                                    (Appx27805-07 at 1342:17-1344:16); and the AT&T Agreement's                                         (Appx27801-03 at 1338:19-1340:12). Because Sprint presented its view of all of Prism's prior agreements, the jury had the opportunity to consider and weight the probative value of these agreements.

In view of the foregoing, the District Court did not abuse its discretion by admitting the AT&T Agreement at trial.

2. **Sprint Did Not Suffer Undue Prejudice Because Prism Used the AT&T Agreement to Prove Damages, Not Liability**

Sprint's claim of unfair prejudice is entirely premised on its claim that Prism used the AT&T Agreement to prove infringement, not damages, and fails for several reasons.

*First,* none of Prism's infringement experts even mentioned the AT&T Agreement, and Prism did not cross-examine any of Sprint's fact witnesses or technical experts with or about this agreement.

*Second*, Prism limited its reference to the AT&T Agreement during opening and closing arguments to explaining Prism's damages theory against Sprint. For example, Prism argued in opening that AT&T received a "huge discount" because it settled ████████████—a statement directed to damages, not infringement. This statement was premised on the AT&T Agreement which states that █████ ████████████████████████████████████████████████ ████████████████████████ Appx39458 at ¶2(a).

Prism's argument that it sought double the amount of the AT&T Agreement in damages was made in the context of explaining that Prism's damages claim was not based solely on the AT&T Agreement, but also on Sprint-specific cost-savings information:

> As I said, … ██████████████████ for their license. We're going to ask for more than double that from Sprint. ***And we're basing that on the cost savings. The cost***

> *savings mean by using our invention, using our patents,*
> *they didn't have to go out and build their own private*
> *network.* … We're not basing on their revenues, how
> much money they make. *We're basing it on how much*
> *money they saved by using our technology.*

Appx26539 at 76:1-13 (emphasis added).

Prism's statements during closing arguments regarding the AT&T

Agreement were also explicitly directed towards damages and, in particular,

rebutting Sprint's argument that the AT&T Agreement was a ████████████

Prism's counsel explained that █████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████ had nothing to do with Prism's allegations of infringement against

Sprint. Appx27935-36 at 1472:10-1473:7.

Sprint's suggestion that the jury award represented "the AT&T Settlement

total of ███████████ plus a penalty" (Dkt. 36 at 53) is utter speculation and there

is no support in the record for such a conclusion. Prism never presented any

argument, fact testimony or expert opinion supporting regarding a "penalty," and

the jury award does not support Sprint's conjecture.[3]

*Third*, Duman testified about Prism's view of Sprint's and AT&T's

comparable scope of use of the Asserted Patents for purposes of damages, not

liability. Appx27155-56 at 692:21-693:5:

---

[3] Given that the jury awarded Prism a smaller amount than what Malackowski
opined, Sprint cannot claim it was penalized.

A. …First of all, the application is very similar. They[] use it to help authenticate the smartphone devices to whatever resources they're wanting access to.

Secondly, again, back to the scope-of-use matter, both companies [are] large companies. Certainly, [the] magnitude of use. There's[] differences between the two but they're very large. There's millions of subscribers who are authenticated thousands of times every year and so a lot of similarities in that regard.

Appx27155-57 at 692:19-694:9.

Duman further explained that "Sprint should be judged on the merits of its actions, not the merits of AT&T's actions." Appx27159 at 696:2-8. Prism's counsel also stated in front of the jury that Duman's testimony was related to licensing, leaving no doubt as to the purpose of Duman's testimony:

> **Duman's view on the AT&T agreement and the relative scope of use between AT&T and Sprint is highly relevant to Prism's view of the appropriate license amount in this case.**

Appx27155 at 692:3-15 (emphasis added). Thus, Duman's testimony was specific to damages issues and not infringement. Indeed, Duman could not have provided infringement testimony (even if he had the technical ability) because he had no access to any Sprint or AT&T confidential technical information. Appx1516-19.

*Fourth*, Malackowski's testimony regarding the AT&T Agreement did not address infringement (other than assuming infringement) and explained that damages must be specific to the infringer, "in this case, Sprint as opposed to AT&T or anyone else." Appx27217 at 754:2-5. Moreover, he testified about *all*

55

of Prism's prior licenses, as well as Sprint's settlement agreements, not just the AT&T Agreement, in connection with his *Georgia-Pacific* analysis. Appx27248-49 at 785:3-786:11, Appx27252-53 at 789:17-790:16. Thus, his economic discussion of both parties' licenses was only in the context of his damages opinion.

*Finally*, Sprint was the only party to even remotely suggest a connection between the AT&T Agreement and Sprint's liability for infringement. During Sprint's closing argument, Sprint's counsel suggested that Sprint should pay because AT&T paid. Appx27976-77 at 1513:21-1514:3 (Sprint: "By golly, we settled with AT&T for ███████████ so [Sprint] ought to pay us double that. That's what [Prism] came in here and basically told you … AT&T paid. [Sprint] should pay too."). Thus, Sprint was the only party to suggest that the AT&T Agreement meant that Sprint was infringing.

In light of the lack of undue prejudice and this Court's explicit directive that settlement licenses may be used for damages purposes, the District Court did not abuse its discretion in admitting the AT&T Agreement, as it admitted all of Prism's licenses agreements, including other settlement agreements.

## IV. THE DISTRICT COURT PROPERLY ADMITTED PRISM'S DAMAGES ANALYSIS

The District Court did not abuse its discretion in permitting Malackowski's damages analysis that included cost-savings to determine a royalty base and his consideration of all the *Georgia-Pacific* factors. Malackowski tied his cost-savings

royalty base to a portion of the footprint of Prism's claimed invention—*i.e.*, the claimed IP Network represented by the Backhaul Network. Sprint repeatedly asserted throughout this case that the novelty of Prism's inventions was the claimed IP Network and its Sprint's damages expert agreed. Appx9700-01 at 31:11-32:1; Appx27825 at 1362:4-16.

Malackowski relied on Sprint financial data, industry studies and Minor's expert opinion To determine the royalty base and highlighted additional portions of the footprint of the claimed invention as qualitative benefits of the invention, such as the claimed authentication and authorization elements. For the reasons described below, the District Court properly allowed the jury to consider Malackowski's damages analysis.

## A. Malackowski Tied His Cost-Savings Analysis to the Footprint of the Claimed Invention

The genesis of Prism's inventions overcame the then-inability to leverage the low cost, but untrusted nature, of an IP Network, such as the Internet, in order to transmit protected computer resources. Appx26404-05 at 110:10-111:6, Appx26408-09 at 114:15-115:23, Appx30941-42. One of the primary benefits of Prism's inventions was the cost savings associated with being able to use an untrusted network, like the Internet. *Id.*

Consistent with the claimed invention, Malackowski observed that the claimed IP Network encompassed the footprint of Prism's inventions and offered

Sprint significant economic benefits. The reason was simple. By paying AAVs for use of the Backhaul Network, which is the accused IP Network, Sprint enjoyed substantial cost-savings from avoiding the much higher cost to implement a noninfringing alternative, specifically building its own private trusted backhaul network. *See, e.g.*, Appx27223-24 at 760:16-761:10, Appx27230-34 at 767:10-770:5 and 770:23-771:10, Appx27236-37 at 773:23-774:6, Appx27242 at 779:4-11. Based on that conclusion, Malackowski used as his royalty base the amount Sprint pays to the AAVs as a conservative proxy for what it would cost to build an equivalent noninfringing network. Appx27231-32 at 768:12-769:6.

The case law supports such an approach. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1324 (Fed. Cir. 2014) ("We have consistently explained that proof of damages must be carefully tied to the claimed invention itself."); *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1240 (Fed. Cir. 2011) (cost savings is an accepted methodology).

On appeal, Sprint argues that Malackowski did not tie his damages analysis to the footprint of the invention by erroneously limiting Prism's inventions to certain "authentication systems" in order to argue that Malackowski did not tie his damages analysis to the footprint of the invention. Dkt. 36 at 63. However, Sprint and its own damages expert agreed that the claimed IP Network is a key part of the footprint of Prism's claimed inventions. For example, Sprint explains in its

principal brief that, "the inventions involve systems and methods *for controlling access to protected computer resources provided over an untrusted network, such as the Internet*." Dkt. 36 at 7 (emphasis added). Sprint reiterates this point throughout its brief, asserting that the "inventions generally relate to a *client-server system communicating over an untrusted network*.'" *Id.* (emphasis added); *see also id.* at 5, 13-14.

Sprint took the same position during the District Court proceedings, including at the *Markman* hearing when arguing that the untrusted network was key to Prism's inventions. *See, e.g.,* Appx9700-01 at 31:11-32:1 ("So we have explicit disclosures in the text of the specification referring to *the present invention is an untrusted network*."). Mirroring these statements, Sprint's damages expert agreed that the claimed IP Network is related to the footprint of the claimed invention. Appx27825 at 1362:4-16 ("Q. You … agree that the footprint of the invention is related to the backhaul. Hampton: Related, yes …").

Because every asserted claim recites this limitation, the IP Network is part of the footprint of the claimed invention. Appx171 at 34:16-19, Appx172 at 36:13-16, Appx 239 at 34:26-29, Appx239-40 at 34:66-35:4, Appx 240 at 36:52-57. By limiting the claimed invention to "the authentication system," Sprint erroneously ignores key claim limitations. *Univ. of Pittsburgh of Commonwealth Sys. Of Higher Educ. v. Varian Med. Sys., Inc.*, 561 Fed. Appx. 934, 947 (Fed. Cir. 2014),

citing *Lucent Techs.*, 580 F.3d at 1337 (holding that entire combined apparatus must be used as damages base, not just one component, because "it is the combination apparatus that is claimed.").

In addition to the IP Network limitation, authentication is part of the footprint of the claimed invention. Malackowski accounted for the benefits associated with the authentication aspect of the claimed invention in connection with his qualitative analysis under the *Georgia-Pacific* factors. Appx27233-34 at 769:7-770:5. Malackowski was not required to limit his damages analysis and royalty base to Sprint's view of the claimed invention.

For these reasons, the District Court did not abuse its discretion in admitting Malackowski's narrowly tailored royalty base that focused on a single aspect of Prism's inventions.

**B.** **Prism Based the Cost-Savings Amount on Sprint Financial Data, Industry Studies and the Expert Analysis of John Minor**

Malackowski's cost-savings analysis relied upon some of Sprint's confidential financial data as a proxy for his cost-savings royalty base analysis. He then confirmed the accuracy and reasonableness of Sprint's cost-savings through Sprint's confidential documents and testimony, industry studies that directly analyzed the cost differential between leasing and building backhaul a backhaul network, and Minor's expert opinion.

### 1. **Malackowski Used An Appropriate Proxy to Determine Sprint's Cost Savings**

Sprint refused to provide discovery regarding its actual cost savings based on its use of the AAV Backhaul Network and did not produce any documents regarding the cost of building out a non-infringing, private network. Thus, to determine Sprint's cost savings, Malackowski used Sprint's backhaul costs as a very conservative proxy, a methodology that economic experts use when actual data is not available. Appx27231-32 at 768:12-769:6; Appx19081-82, *QBAS Co. v. C Walters Intercoastal Corp.*, No. 8:10-00406, slip op. (C.D. Cal. May 24, 2011) (finding that plaintiff "has sufficiently proven its requested damages" based on "using the invoiced sales during 2008 as a proxy for sales during the period of infringement."); *see also MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-CV-5341 YGR, 2014 WL 2854890, at *5 (N.D. Cal. June 20, 2014) (permitting use of a proxy in patent damages analysis where expert "estimated damages based on publicly available industry data").

Malackowski performed an independent analysis to determine the appropriate proxy for Sprint's cost savings and also confirmed his opinion through Minor's expert opinion (discussed in the following section). More particularly, Malackowski sought to "have a proper matching of the use of the invention … [and] went to Sprint records and identified their total backhaul cost which includes more than just the AAVs." Appx27238 at 775:6-11, Appx25568-69 at 759:7-

61

760:5, Appx27242-43 at 779:12-780:7, Appx27245 at 782:3-25. Malackowski then did a multi-step apportionment analysis.

First, he apportioned the total expenses associated with backhaul costs to just the Sprint-specific variable costs that Sprint reported for using the AAV Backhaul Network for data services. He further reduced the amount to the variable AAV costs to limit the costs to just the 161 user devices that were charged with infringement. Appx27238 at 775:12-:20 ("I wanted to limit it to what I call variable backhaul, costs that change with use" and "even after that there were certain devices that were specifically accused or related to this litigation … so I limited my analysis just to those -- just to the backhaul costs associated with those devices.").

As a further step, to ensure that he was narrowly limiting himself to just the Backhaul Network costs, Malackowski further accounted for the variance in backhaul costs over time. As Malackowski explained, the cost for "backhaul varies over time" and "varies between, say, for example, an AT&T and a Sprint, and that is a good thing because it allows us to match the use of the invention to its value in the marketplace" because "[w]e want to capture that variation … [and] don't want to say that, hey, it's ████ regardless if you're Sprint or Verizon or -- or anybody. We want the right numbers." Appx25582-83 at 773:23-774:10. Thus, Malackowski matched his analysis to the footprint of the invention in the

marketplace based on the information Sprint produced to ensure that his methodology of apportionment was specific to Sprint. Appx27238-41 at 775:6-778-4.

Malackowski also validated his cost-savings analysis through additional Sprint documents and testimony, and industry studies demonstrating that Sprint's actual cost savings would be at least two to five times higher than the amount Sprint pays to AAVs for backhaul.  For example, Sprint's witnesses Eric English and Mark Wilson each confirmed that Sprint pays for the shared AAV Backhaul Network because the cost to build a trusted private backhaul network would be "very expensive" and "cost prohibitive."  Appx25573 at 764:6-764:9 ("And as Mr. English describes and as Mr. Minor describes, the next best option would be to build their own private network that wasn't shared but it's very expensive."); Appx27459 at 996:19-22 ("Q. And it's your understanding that Sprint needs to use AAVs for the backhaul because it would be cost-prohibitive for Sprint to create its own private physical backhaul network?  English: Yes.").

Consistent with that testimony, Malackowski relied on a study conducted by Senza Fili Consulting (Appx38658-68) (the "Senza Report"); Appx27242-43 at 779:17-780:22.  The Senza Report measured the relative cost of leasing shared backhaul (*i.e.*, paying AAVs for use of the public Backhaul Network) versus building out a private fiberoptic backhaul infrastructure.  Appx38662-66.  The

study concluded that the cost differential of building a private network would be between ***three and four and a half times greater*** than leasing from the AAVs, based on a net present value of 5 years (which is approximately the length of the hypothetical license in the instant actions). Appx27242-43 at 779:18-780:7. Similarly, Malackowski relied upon another industry survey from Infonetics Research (Appx39289-91) concluding that the cost of leasing could be ***six times higher*** than the cost to build backhaul. Appx27246 at 783:1-21. These industry reports further buttressed the testimony of Sprint's witnesses and Minor's opinion regarding the additional cost of building a non-infringing backhaul network versus paying for the Backhaul Network.

Sprint's contention that Malackowski included features unrelated to the invention in the royalty base is incorrect and disregards the underlying foundation of Malackowski's opinion. As Malackowski explained, the use of Sprint's expenses for the Backhaul Network is appropriate because it accounts for Sprint's specific costs to implement a noninfringing backhaul that is comparable or equivalent to the accused Backhaul Network. *See, e.g.*, Appx27230-31 at 767:14-768:17, Appx25582 at 773:2-:14, Appx27238 at 775:6-20, Appx25607-08 at 798:4-799:1. For example, if Sprint employed a premium "Cadillac" backhaul (e.g., which had a higher level of guaranteed performance where Sprint would pay AAVs more for the Backhaul Network), versus a less-expensive "Chevy" model

(e.g., which had a lower performance where Sprint would have to pay AAVs less for the Backhaul Network), Malackowski's royalty base accounts for those differences. Appx27286-87 at 823:18-824:14. This ties the ultimate royalty base specifically to what Sprint elected to use.

Moreover, to the extent Sprint had an issue with the amount of the royalty base, Sprint failed to present any countervailing evidence as to what the appropriate amount would be for the cost-savings royalty base. Indeed, Sprint's damages expert conceded that he could have performed an analysis of Sprint's cost-savings, but did not do so. Appx27792 at 1329:2-16, Appx27823 at 1360:9-21. As a result, it was appropriate for the jury to weigh the evidence and determine damages based thereon. *VirnetX*, 767 F.3d 1330 (district court did not abuse its discretion by submitting to the jury a factual dispute regarding degree of comparability of licenses for reasonable royalty determination).

Accordingly, the District Court did not abuse its discretion given Malackowski's independent analysis that included multiple different sources.

2. **Minor's Opinion Regarding Cost Savings Was Reliable**

Malackowski properly relied on Minor's opinion that that the cost to Sprint to build its own private trusted backhaul network would be two to three or up to five times higher than what Sprint pays for the Backhaul Network. As explained below, Minor's analysis was reliable, and there was no abuse of discretion in

permitting Malackowski to rely upon it as an independent ground for his cost-savings analysis. Sprint's disagreements as to Minor's analysis simply go to weight of the evidence, a battle that Sprint has already lost.

Minor relied on his decades of professional experience, including his extensive history with building out and leasing backhaul infrastructure, and building and estimating the cost of building private networks, to opine about the cost savings realized when a company uses the AAV Backhaul Network. *See, e.g.*, Appx21224-53 at 393:16-404:17; Appx26962-64 at 499:21-501:9. As he explained at trial, Minor has been engaged in a variety of backhaul design and implementation projects for over thirty years in his capacity as a technical lead for a computer technology company, and as the owner of a systems integration firm and had budgeted for and provided cost estimates for numerous backhaul network projects. Appx26856-57 at 393:16-394:1; Appx26864-65 at 401:21-402:9, Appx26866-67 at 403:20-404:4; Appx26867 at 404:5-17, and Appx26963-64 at 500:9-501:9. Given his extensive experience in building out and leasing backhaul links, Minor was qualified to opine about the estimated cost to build out a private backhaul network versus leasing a similar but shared public network (such as the Backhaul Network). Appx26962-63 at 499:21-501:9.

Moreover, Minor detailed "how [his] experience [led] to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his]

experience is reliably applied to the facts." Appx26962-64 at 499:21-501:9. He outlined the process Sprint would need to undertake to build a noninfringing backhaul network. Appx26968-83 at 505:12-520:2. Minor also identified key considerations in building a backhaul network, such as the cost per mile of fiber optic cable, annual capital expenditures per cell site to deploy fiber, and specialized equipment (such as carrier grade routers and switchers) that need to be purchased. *Id.*

Minor's extensive relevant industry experience has all the indicia of reliability to support the opinion he rendered. Indeed, professional experience and industry studies are the very pillars of reliable expert testimony, as made express in FRE 702.[4] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999). Thus, Malackowski properly relied on Minor's opinion that the actual cost savings for Sprint to build a non-infringing backhaul network would be between two to five times greater than the amount paid to AAvs for use of the Backhaul Network. Appx27230-31 at 767:14-768:17.

Minor confirmed that his industry experience was accurate based on the Senza Report discussed above, which explicitly measured and found the cost of leasing shared backhaul would be three to four and a half times more expensive

[4] The Advisory Committee Notes to the 2000 Amendments to Rule 702 explicitly recognize that "**an expert may be qualified on the basis of experience.**" (citations omitted) (emphasis added).

than versus building out a private backhaul network. Appx26986-91 523:7-528:7. Minor also testified regarding an industry study entitled "Economic of Backhaul," which estimated the cost per mile of fiber optic cable to be between $40,000 and $250,000 depending upon geography, soil characteristics and the placement of such cable, namely whether it needs to be buried or is placed overhead. Appx26983-86 at 520:3-523:6; Appx38631-33. These studies directly supported his conservative opinions regarding the much greater magnitude and cost to Sprint if it were to build out a noninfringing backhaul infrastructure than what an entity like Sprint would pay the AAVs. Appx26962 at 499:7-20.

Accordingly, the District Court did not abuse its discretion in allowing Malackowski to rely on Minor's well founded opinion. *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1303 (Fed. Cir. 2015), *reh'g en banc denied in part*, 805 F.3d 1382 (Fed. Cir. 2015) (holding damages expert properly relied on technical experts for "areas outside her expertise, such as details unique to the semiconductor industry") (citation omitted).

### 3. This Court's Jurisprudence Fully Supports Malackowski's Cost-Savings Analysis

Malackowski presented a cost-savings analysis following this Court's jurisprudence that "[r]eliance upon estimated cost savings from the use of the infringing product is a well settled method of determining a reasonable royalty." *Powell*, 663 F.3d at 1240 (quoting *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d

1075, 1080-81 (Fed. Cir. 1983)).  In *Powell*, this Court affirmed a damages award in part because the damages expert's evidence included the "cost savings that Home Depot could expect to achieve by reducing claims from employees while using radial arm saws" by implementing the patented guards for the radial saws. *Id*.  Similarly, Malackowski's cost-savings analysis based on use of the patented technology in lieu of the cost of implementing a non-infringing alternative reflects the same type of cost savings that Home Depot enjoyed in the *Powell* case—*i.e.*, avoiding the cost of employee injury claims by using the patented technology. Appx25566-67 at 757:6-758:9, Appx25576-77 at 767:14-768:17, Appx25579-80 at 770:23-771:10, Appx25582 at 773:2-14, Appx25607-08 at 798:4-799:1.

Sprint's reliance on *Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302 (Fed. Cir. 2002), is entirely misplaced.  In *Riles*, this Court rejected a damages theory because the cost savings analysis went well beyond the footprint of the invention.  *Id.* at 1311-13.  Here, by contrast, Malackowski's cost savings approach was limited to the value of just the claimed IP Network (*i.e.*, the footprint of the claimed invention) as opposed to the entirety of Sprint's infringing network, which would necessarily include the costs associated with the claimed authentication and access servers.  Likewise, this Court's decision in *Monsanto v. McFarling*, a case cited by Sprint, similarly supports Malackowski's cost savings analysis.  488 F.3d 973, 981 (Fed. Cir. 2007) (finding that the value of patented

technology could be determined by the cost savings obtained by using the patented technology as opposed to the non-infringing alternative by relying on "three studies that showed cost savings.").

For these reasons, Sprint cannot meet its burden to show that the District Court abused its discretion in admitting Prism's cost-savings analysis.

## V. THE DISTRICT COURT PROPERLY CONSIDERED AND DENIED SPRINT'S MOTION FOR A NEW TRIAL

The District Court fully considered and properly denied Sprint's motion for a new trial.

As a threshold matter, Sprint fails to even identify a *prima facie* case of reversible error. Sprint does not identify the specific legal errors it alleges the District Court failed to consider. Dkt. 36 at 58-61. Sprint also does not even attempt to show that the District Court actually abused its discretion, such that a miscarriage of justice resulted that would warrant a new trial. Therefore, Sprint failed to carry its burden on appeal to show that the District Court abused its discretion on any of these unnamed issues such that the resulting prejudice would have influenced the outcome of that trial. *Qualley v. Clo-Tex Int'l, Inc.*, 212 F.3d 1123, 1128 (8th Cir. 2000) ("An abuse of discretion occurs when the error prejudicially influences the outcome of the case … and the burden of showing prejudice rests on the party asserting it.") (internal citation omitted). For this reasonable alone, Sprint's appeal should be denied.

In addition, Sprint also failed to establish that the District Court "improperly treated Sprint's legal challenges as weight of the evidence challenges." Dkt. 36 at 59-60. Notably, an examination of "Sprint's eight-point motion for a new trial" (Dkt. 36 at 59) reveals that the District Court already fully considered and properly ruled on Sprint's challenges. Indeed, most of those issues have been raised and addressed on this appeal—specifically, the admission of the AT&T Agreement; Prism's and its expert's arguments relating to the IP Network limitation; and the cost-savings analysis presented by Prism's damages expert. The District Court fully addressed Sprint's legal arguments in previously denying Sprint's motions on these issues. *See supra* Sections I, II, and III.

For the remaining issues—specifically, the District Court's refusal to instruct the jury on divided infringement, include Sprint's special interrogatories in the verdict form, and permit Sprint's damages expert to present a damages analysis under the smallest saleable patent practicing unit—Sprint provides no explanation on appeal as to why the District Court abused its discretion. Thus, Sprint failed to carry its burden on appeal. *See Qualley*, 212 F.3d at 1128 ("….the burden of showing prejudice rests on the party asserting it.").

Finally, contrary to Sprint's opening brief, the District Court's denial of Sprint's motion for a new trial outlined the correct standard, stating that "the 'key question is whether a new trial should have been granted to avoid a miscarriage of

justice.'" Appx4-5 (quoting *McKnight By & Through Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396, 1400 (8th Cir. 1994)). By articulating this standard, the District Court necessarily understood what was encompassed in the analysis for a request of a new trial, including the effect of "legal errors," and ultimately rejected Sprint's arguments. Thus, the District Court's conclusion that Sprint failed to demonstrate a miscarriage of justice included consideration of the purported legal errors identified by Sprint.

## PRISM'S CROSS MOTION

## VI. PRISM IS ENTITLED TO SUPPLEMENTAL DAMAGES AND ONGOING ROYALTIES

The District Court abused its discretion in denying Prism's motion for supplemental damages through entry of judgment and ongoing royalties through the life of the patents, finding that the jury's award compensated Prism for Sprint's past, present and ongoing infringement. Appx11-13. To the contrary, the trial record confirms that the jury awarded Prism $30 million in damages only for Sprint's *past* infringement of Prism's patents.

As this Court has explained, unless there is unequivocal evidence that a jury award covers both past and future damages, it is an abuse of discretion for a district court to deny damages through the life of the patent. *WhitServe, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 35 (Fed. Cir. 2012) (holding that "damages by definition covers only past harm" and that district court abused its discretion in

finding a fully paid up license when "verdict form did not indicate that the award was meant to cover future use of [plaintiff's] patents"); *Telecordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1378 (Fed. Cir. 2012) ("In the absence of an express statement in the verdict, this court cannot determine whether the jury compensated [plaintiff] for all of [defendant's] infringing activities.").

To determine whether a verdict encompasses ongoing royalties, this Court evaluates whether (i) the verdict form expressly indicates that the award includes future damages; (ii) the jury was instructed as to whether its award would constitute a fully paid up license for past and future infringement; and (iii) the evidence and expert opinion presented at trial supported an award inclusive of future damages. Here, all of these guideposts, including a question from the jury during deliberations, demonstrate that the jury limited its damages award to Sprint's past infringement and the District Court abused its discretion in finding otherwise.

A. **The Verdict Form Explicitly Refers to Damages Resulting from Sprint's Past Infringement**

The verdict form confirms that the jury limited its award to past infringement, as it contains two questions that only refer to Sprint's infringement in the past tense. The first question asked for the jury's finding regarding Sprint's past infringement: "Do you find that [Prism] has proven by a greater weight of the evidence that [Sprint] *infringed* any of the following asserted claims?"

Appx23484 (emphasis added).  The verdict form then instructed the jury that the second question regarding damages should only be answered "for each claim you have found to be **infringed**," again explicitly referring to past infringement.  *Id.* (emphasis added).

The second question, which was only to be answered upon a finding of past infringement by Sprint, requested the jury to identify the amount of damages that should be awarded to compensate Prism for that past infringement: "What amount of reasonable royalty damages, if any, do you find that Prism has proven by a greater weight of the evidence is adequate ***to compensate Prism for Sprint's infringement*** of [the asserted patents]?"  Appx23485 (emphasis added).  Thus, the verdict form directly ties the award of damages question to the jury's finding of claims that Sprint infringed, and is therefore necessarily limited to Sprint's past infringement.

The District Court disregarded the verdict form and focused on the term "reasonable royalty," concluding that the term necessarily encompassed both past and future damages.  That is incorrect as a matter of law.  *WhitServe*, 694 F.3d at 35 (holding that "damages by definition covers only past harm").  As this Court has explained, a reasonable royalty can take multiple forms, including a running royalty, a fully paid up license, and a lump sum for past damages only.  *Telecordia*,

612 F.3d at 1378. There is no legal basis to equate a "reasonable royalty" with a fully paid-up lump sum license covering future infringement. *Id.*

Here, the unequivocal language of the of the verdict form provides for an award of damages for Sprint's past infringement and does not contain any suggestion that the award included future royalties. Thus, the District Court's finding that the verdict form covered Sprint's past, present and future infringement was an abuse of discretion. *Telecordia*, 612 F.3d at 1378; *WhitServe*, 694 F.3d at 35; *Apple, Inc. v. Samsung Elecs. Co.*, 67 F. Supp. 3d 1100, 1120 (N.D. Cal. Sept. 8, 2014) (awarding supplemental damages and stating: "there is no express statement in the verdict form that the damages award would encompass damages for future infringement").

### B. The Jury Was Instructed to Award Damages for Sprint's Past Infringement

The jury instructions regarding damages further confirms that the verdict only applied to past damages. The instruction refers to Sprint's infringement in the past tense, stating: "Your damages award, if you reach the issue, should put Prism in approximately the same financial position that it would have been in *had the infringement not occurred*." Appx23473 (emphasis added).

This Court in *Whitserve* found that a general instruction to the jury regarding "damages" could not support a district court's finding that an award covered future infringement because "'damages' ... by definition covers only past harm."

*Whitserve, LLC*, 694 F.3d at 35. Here, the District Court provided a general instruction and did not instruct the jury that its award of damages necessarily included compensation for Sprint's future infringement or forward-looking royalties. Thus, as in *WhitServe*, the District Court abused its discretion in interpreting the instruction as being "clear" that an award of damages provided Prism with complete relief for Sprint's infringement through the life of the patents. Appx12.

### C. The District Court's Response to the Jury's Question During Deliberations Confirms the Award Did Not Include Future Infringement

A question from the jury during deliberations confirms the damages were only for past infringement. The jury asked whether its award provided Sprint with an ongoing license: "Does Royalty Payment/damages now give Sprint the *license* to 4 Asserted Patents?" Appx23447 (emphasis added). The District Court's unequivocal response, that both Prism and Sprint agreed upon, was "no." *Id.* Accordingly, the jury was instructed that its damages award would ***not*** provide Sprint with a "license" to Prism's "asserted patents." Without a fully paid up license, Sprint must pay a royalty for its continuing infringement.

Notwithstanding this, Sprint argued below that the jury question did not confirm that the award was limited to past damages, contending that the reason the District Court answered "no" is because there were only two asserted patents, and

the jury asked about a license to "4 Asserted Patents." Appx29890. Sprint's strained reading is nonsensical. There was no evidence, argument or testimony presented at trial regarding four asserted patents, and the only evidence at trial, including the only damages opinion presented were based on Prism's two Asserted Patents.

Moreover, even under Sprint's misinterpretation of the *reason* for the District Court's response, the *result* remains that the jury was explicitly instructed that Sprint did ***not*** receive a license to Prism's Asserted Patents, irrespective of whether it was two or four patents. There is no way to reconcile the District Court's finding that the jury award covered Sprint's future infringement with its instruction that Sprint would ***not*** receive a license to the asserted patents as a result of the award. Without a license, Sprint's future infringement could not be covered and therefore the damages award could not encompass such future infringement. Indeed, the District Court's denial of Prism's motion for ongoing royalties does not address this dispositive point. As such, the District Court's finding constitutes an abuse of discretion.

### D. The Evidence and Expert Opinion Presented at Trial Were Limited to Past Damages

The District Court abused its discretion in interpreting the jury verdict to encompass future damages because that finding is inconsistent with the evidence and expert opinions presented at trial. *WhitServe*, 694 F.3d at 35. Rather, district

courts must consider the evidence and expert opinions presented to the jury and interpret the verdict in a manner consistent therewith. *Id.*; *Apple*, 67 F. Supp. 3d at 1121 (awarding supplemental damages "[b]ecause the record suggests it is plausible that the jury intended to award [plaintiff] damages only for past infringing sales, the Court cannot conclude that the jury necessarily awarded a lump-sum award intended to cover past and future infringement."). Here, the District Court failed to do so.

The jury had no basis whatsoever to estimate future damages. Sprint only provided two years of data from which damages could be determined (*i.e.*, 2012-2014) and Malackowski accordingly limited his damages opinion to a lump sum for this period of past infringement:

> Q. …at the bottom [of the slide summarizing your opinion] you refer to the years 2012 and 2014. What is that in reference to?
>
> A. That is the period of damage that's driven by the date of first infringement in 2012 and the date of last available information we have for Sprint with respect to cost savings.
>
> **Q. So did your opinion then just relate to just that time period?**
>
> **A. Yes, ma'am.**

Appx27221 at 758:10-17 (emphasis added); *see also* Appx27238-39 at 775:23-778:4, Appx27263 at 800:13-15. Sprint's damages expert was precluded from

offering a competing opinion and, as a result, the jury was only presented with Prism's calculation of past damages.

Because the District Court did not enter judgment until June 24, 2015 (Appx1), and Prism's patents do not expire until June 11, 2017 (Appx110, Appx177), it is undisputed that the jury's verdict was based on data that fails to account for Sprint's infringing conduct for the nearly six months before the entry of judgment, and approximately three years before the expiration of Prism's patents.

Sprint argued below that the jury's award should nevertheless be interpreted as covering both past and future damages because Prism's prior settlement licenses, and in particular the AT&T Agreement, provided for lump sum payments. Appx29888-89. This argument is entirely unsupported by the record evidence and fails as a matter of law.

*First*, the jury was never presented with an expert opinion premised on Prism's prior licenses. Instead, Malackowski opined regarding a reasonable royalty amount based on cost savings and provided no calculation of a damages amount based on those licenses (although he referred to them). Similarly, Sprint's expert was excluded from providing any reasonable royalty calculation. Appx21878-79. Thus, he did not provide the jury with any damages calculation or

competing damages (lump sum or otherwise) opinion premised on Prism's prior licenses.

*Second,* this Court found that a district court abused its discretion in finding that a jury verdict granted a fully paid-up license even where the jury heard evidence of two prior lump-sum licenses. This Court found that, as here, there was no support for such a finding based on the evidence, the expert opinion, the jury verdict form or the jury instructions presented at trial:

> [W]e cannot accept [defendant's] suggestion that a paid-up license was awarded. Although the jury heard evidence of two lump sum licenses [plaintiff] had previously granted, ***the parties limited their damages argument to past infringement rather than projected future infringement. The jury was instructed to award "damages," which by definition covers only past harm.*** The jury's verdict did not indicate that the award was meant to cover future use of [plaintiff's] patents, and the trial court did not interpret the award as such. ***We, accordingly, decline to find that post-trial relief was properly denied because a paid-up license was awarded.***

*WhitServe*, 694 F.3d at 35 (emphasis added) (citations omitted).

Likewise here, there is no basis to find the jury awarded damages for future infringement merely because it heard evidence of Prism's other settlement licenses. Thus, this Court should remand for the District Court to award Prism damages through the life of the Asserted Patents.

## CONCLUSION

For the foregoing reasons, Prism respectfully requests that this Court affirm the infringement verdict of the District Court, and reverse and remand for the District Court to grant an ongoing royalty for Sprint's infringement after the jury trial in this matter.

Respectfully submitted,

Dated: May 12, 2016      By:   */s/ Paul Andre*
    **Kramer Levin Naftalis & Frankel LLP**
    Jonathan S. Caplan, Esq.
    Mark A. Baghdassarian, Esq.
    Aaron M. Frankel, Esq.
    Marcus A. Colucci, Esq.
    Cristina Martinez, Esq.
    1177 Avenue of the Americas
    New York, NY 10036
    Tel: 212.715.9100
    Fax: 212.715.8000
    jcaplan@kramerlevin.com
    mbaghdassarian@kramerlevin.com
    afrankel@kramrelevin.com
    mcolucci@kramerlevin.com
    cmartinez@kramerlevin.com

    **Kramer Levin Naftalis & Frankel LLP**
    Paul Andre, Esq.
    Lisa Kobialka, Esq.
    990 Marsh Road
    Menlo Park, CA 94025
    Tel: 650.752.1700
    Fax: 650.752.1810
    pandre@kramerlevin.com
    lkobialka@kramerlevin.com

**Prism Technologies LLC**
André J. Bahou, Esq.
Vice President & Chief IP Officer
750 Old Hickory Blvd., Ste. 150
Brentwood, TN 37027
Telephone: (202) 802-9515
Fax: (402) 578-1447
aj.bahou@prsmip.com

*Attorneys for Plaintiff-Cross-Appellant,*
*Prism Technologies LLC*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 12, 2016, a copy of the

foregoing document:

## [NON-CONFIDENTIAL] PLAINTIFF-APPELLEE AND CROSS-APPELLANT PRISM TECHNOLOGIES, LLC'S RESPONSE TO SPRINT SPECTRUM L.P.'S OPENING BRIEF AND ITS OPENING BRIEF FOR ITS CROSS-APPEAL

was filed electronically with the Clerk of the Court using the Appellate CM/ECF

System, which will send a Notice of Docket Activity via electronic mail to all

counsel of record.  Additionally, a copy of the foregoing document was served

upon counsel for Appellant via electronic mail listed below:

| | |
|---|---|
| Michael J. Bettinger | Carter G. Phillips |
| Irene Yang | Ryan C. Morris |
| **SIDLEY AUSTIN LLP** | Jennifer J. Clark |
| 555 California Street, Suite 2000 | **SIDLEY AUSTIN LLP** |
| San Francisco, CA 94104 | 1501 K Street. N.W. |
| Telephone: (415) 772-1200 | Washington, D.C. 20005 |
| Facsimile: (415)772-7400 | Telephone: (202) 736-8000 |
| mbettinger@sidley.com | Facsimile: (202) 736-8711 |
| irene.yang@sidley.com | cphillips@sidley.com |
| | rmorris@sidley.com |
| | jennifer.clark@sidley.com |

Dated:  May 12, 2016            By:  _/s/ Paul Andre_____
                                     Paul J. Andre

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(A)</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 16,491 words, exclusive of the certificate of interest, table of contents, table of citations, statement of related cases, addendum and this certificate of compliance as exempted by Fed. R. App. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14 point font.

Respectfully submitted,

Dated:  May 12, 2016       By:  */s/ Paul Andre*

**Kramer Levin Naftalis & Frankel LLP**
Jonathan S. Caplan, Esq.
Mark A. Baghdassarian, Esq.
Aaron M. Frankel, Esq.
Marcus A. Colucci, Esq.
Cristina Martinez, Esq.
1177 Avenue of the Americas
New York, NY 10036
Tel:  212.715.9100
Fax:  212.715.8000
jcaplan@kramerlevin.com
mbaghdassarian@kramerlevin.com
afrankel@kramrelevin.com
mcolucci@kramerlevin.com
cmartinez@kramerlevin.com

**Kramer Levin Naftalis & Frankel LLP**
Paul Andre, Esq.
Lisa Kobialka, Esq.

990 Marsh Road
Menlo Park, CA 94025
Tel: 650.752.1700
Fax: 650.752.1810
pandre@kramerlevin.com
lkobialka@kramerlevin.com

**Prism Technologies LLC**
André J. Bahou, Esq.
Vice President & Chief IP Officer
750 Old Hickory Blvd., Ste. 150
Brentwood, TN 37027
Telephone: (202) 802-9515
Fax: (402) 578-1447
aj.bahou@prsmip.com

*Attorneys for Plaintiff-Cross-Appellant,*
*Prism Technologies LLC*