No. 16-1456, 16-1457

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

PRISM TECHNOLOGIES LLC,
*Plaintiff-Cross-Appellant*,
v.
SPRINT SPECTRUM L.P., DBA SPRINT PCS,
*Defendant-Appellant*.

Appeal from the United States District Court for the District of Nebraska in Case No. 8:12-cv-00123, Judge Lyle E. Strom

# CORRECTED NON-CONFIDENTIAL REPLY AND RESPONSE BRIEF OF SPRINT SPECTRUM L.P.

CARTER G. PHILLIPS
RYAN C. MORRIS
JENNIFER J. CLARK
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

MICHAEL J. BETTINGER
IRENE YANG
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, California 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400
*Counsel for Sprint Spectrum L.P.*

## CERTIFICATE OF INTEREST

Counsel for appellant Sprint Spectrum L.P. certifies the following:

1. The full name of every party represented by me is:

Sprint Spectrum L.P.

2. The name of the real party in interest represented by me is:

None

3. All parent corporations and any publicly held companies that own 10 percent of the stock of the party or amicus curiae represented by me are listed below:

Sprint Spectrum L.P. is directly or indirectly owned by Sprint Communications, Inc. (SCI). SCI is a subsidiary of Sprint Corporation, a public company listed on the New York Stock Exchange. SoftBank Corp., a public company listed on the Tokyo Stock Exchange First Section, owns 10% or more of the stock of Sprint Corporation.

4. The names of all law firms and the partners or associates who appeared for Sprint Spectrum L.P. in proceedings before the District Court, or are expected to appear in this Court, are:

SHOOK, HARDY & BACON LLP: Albert F. Harris, B. Trent Webb, Beth A. Larigan, Christine A. Guastello, Jesse J. Camacho, John D. Garretson, Jonathan N. Zerger, Mary J. Peal, Richard D. Eiszner, Sara D. Sunderland

LOCHER PAVELKA DOSTAL BRADDY & HAMMES, LLC: Amy M. Locher

CASSEM, TIERNEY, ADAMS, GOTCH & DOUGLAS: Carolyn A. Wilson, David A. Blagg, Michael K. Huffer

HILGERS GRABEN PLLC: Carrie S. Dolton, Michael T. Hilgers

K&L GATES LLP: Christopher Hanba, Margaux L. Nair, Michael J. Abernathy

SIDLEY AUSTIN LLP: Carter G. Phillips, Michael J. Bettinger, Ryan Morris, Irene I. Yang, Jennifer J. Clark

Dated: June 28, 2016

/s/ Ryan Morris
Ryan Morris

# TABLE OF CONTENTS

Pursuant to Federal Circuit Rule 28(d)(2)(B), Appellant has prepared a public version of its brief in which it has redacted certain confidential information. Specifically, the material omitted on pages 3, 5, 13, 14, 16, 17, 18, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, 31, 59, 60, 61, contains references to information that has been designated confidential by the parties. Specifically, each of the pages cited above contains information that was sealed in the district court and requires continued confidential treatment in this Court.


CERTIFICATE OF INTEREST ........ i

TABLE OF CONTENTS ........ iii

TABLE OF AUTHORITIES ........ v

STATEMENT OF RELATED CASES ........ vii

INTRODUCTION AND SUMMARY OF THE ARGUMENT ........ 1

ARGUMENT ........ 5

I. THE JUDGMENT OF INFRINGEMENT RESULTED FROM THE DISTRICT COURT'S FAILURE TO RESOLVE A DISPUTE ABOUT CLAIM SCOPE AND CANNOT STAND. ........ 5

A. The Court Can Reverse the Judgment of Infringement. ........ 6

B. The District Court Erred in Failing to Resolve a Dispute Over Claim Scope. ........ 7

1. Prism's legal responses are meritless. ........ 8

2. Prism's reading of the record is unsupported. ........ 12

3. Prism has no real response on the "path to access" dispute. ........ 18

II. THE DISTRICT COURT ERRED IN ADMITTING THE AT&T SETTLEMENT AGREEMENT. ........ 20

A. Admission of the AT&T Settlement Agreement Violated Rule 403. 20

B. Admission of the AT&T Settlement Violated Rule 408. 32

III. THE DISTRICT COURT ERRED IN ADMITTING PRISM'S DAMAGES ANALYSIS THAT IS NOT TIED TO THE FOOTPRINT OF THE INVENTION AND IS OTHERWISE UNRELIABLE 37

A. Prism Did Not Invent the Ethernet Backhaul on Which It Based Its Damages Calculation. 37

B. Prism Further Divorced Its Damages Analysis from the Footprint of the Invention by Basing the Purported Cost "Savings" on Leasing a Backhaul and on Features Wholly Unrelated to the Claimed Invention. 42

IV. THE DISTRICT COURT APPLIED THE WRONG LEGAL STANDARD 49

CROSS APPEAL 51

I. THE DISTRICT COURT DID NOT ABUSE ITS BROAD DISCRETION IN DECLINING TO AWARD SUPPLEMENTAL DAMAGES AND ONGOING ROYALTIES. 51

A. The Verdict Form Covers Ongoing Infringement. 54

B. The Record Confirms that the District Court Did Not Abuse its Discretion in Interpreting the Jury Award to Cover Ongoing Infringement. 59

CONCLUSION 63

CERTIFICATE OF SERVICE 65

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014) .......... 37

*AstraZeneca AB v. Apotex Corp.*,
782 F.3d 1324, 1336 (Fed. Cir. 2015) .......... 35, 36

*BIC Leisure Products, Inc. v. Windsurfing Int'l, Inc.*,
1 F.3d 1214 (Fed. Cir. 1993) .......... 43

*EEOC v. Sw. Bell Tele., L.P.*,
550 F.3d 704 (8th Cir. 2008) .......... 7

*Eon Corp. IP Holdings v. Silver Spring Networks*,
815 F.3d 1314 (Fed. Cir. 2016) .......... 1, 5, 7, 8, 9, 10

*Function Media, LLC v. Google, Inc.*,
708 F.3d 1310 (Fed. Cir. 2013) .......... 11

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) .......... 20, 21, 24, 25, 26, 28, 33, 34, 35, 36

*Monsanto Co. v. McFarling*,
488 F.3d 973 (Fed. Cir. 2007) .......... 49

*In re MTSG, Inc.*,
675 F.3d 1337 (Fed. Cir. 2012) .......... 33, 34

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008) .......... 2

*Oiness v. Walgreen Co.*,
88 F.3d 1025 (Fed. Cir. 1996) .......... 43

*Powell v. Home Depot, U.S.A., Inc.*,
663 F.3d 1221 (Fed. Cir. 2011) .......... 47

*Riles v. Shell Expl. & Prod. Co.*,
298 F.3d 1302 (Fed. Cir. 2002) .......... 48, 49

*Ringuette v. City of Fall River*,
146 F.3d 1 (1st Cir. 1998) .......... 37

*Rude v. Westcott*,
130 U.S. 152 (1889) .......... 33, 36

*SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*,
926 F.2d 1161 (Fed. Cir. 1991) .......... 42

*Telecordia Tech., Inc. v. Cisco Sys., Inc.*,
612 F.3d 1365 (Fed. Cir. 2010) .......... 51, 52, 53, 54, 55, 61

*University of Pittsburgh v. Varian Medical Systems, Inc.*,
561 F. App'x 934 (Fed. Cir. 2014) .......... 41, 42

*Verizon Services Corp. v. Cox Fibernet Va., Inc.*,
602 F.3d 1325 (Fed. Cir. 2010) .......... 11

*VirnetX, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014) .......... 21, 46

*Whitserve LLC v. Computer Packages, Inc.*,
694 F3d. 10 (Fed. Cir. 2012) .......... 51, 52, 55

**Other Authorities**

Federal Rule of Evidence 403 .......... 20, 21, 22, 23, 24, 27, 32, 37

Federal Rule of Evidence 408 .......... 20, 21, 22, 23, 24, 32, 33, 34, 35, 36, 37

## STATEMENT OF RELATED CASES

No other appeal in or from the same proceeding was previously before this Court or any other appellate court.

The following related case involving the same patents in suit was appealed to this Court and docketed on May 10, 2016:

*Prism Technologies LLC v. T-Mobile USA, Inc.*, No. 16-2031

In addition, the following related cases are pending in the United States District Court for the District of Nebraska and are currently stayed pending the outcome of this appeal and the appeal in the above-referenced *T-Mobile* case:

*Prism Technologies LLC v. U.S. Cellular Corp.*, Case No. 8:12-cv-125 (D. Neb.)

*Prism Technologies LLC v. Cellco Partnership d/b/a Verizon Wireless*, Case No. 8:12-cv-126 (D. Neb.).

These three cases were consolidated with the present case in the district court for pre-trial purposes.

In addition, this Court has previously heard two appeals involving the same or related patents:

*Prism Technologies LLC v. McAfee, Inc., et al.*, No. 2013-1135: In this appeal, a panel composed of Judges Lourie, Bryson, and O'Malley affirmed the judgment against Prism under Federal Circuit Rule 36.

*Prism Technologies LLC v. Verisign, Inc., et al.*, No. 2007-1315: In this appeal, a panel composed of Judges Mayer, Bryson, and Gajarsa affirmed the judgment against Prism under Federal Circuit Rule 36.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Prism's response brief attempts to paper over the various district court errors that warrant vacatur or reversal of the judgment against Sprint. Prism attempts to insulate the trial court's errors behind accusations of waiver and by confusing the legal issues and the record. These efforts fail.

I. The district court failed to perform its ongoing duty to resolve a dispute between the parties about the scope of the "Internet Protocol network" limitation, erroneously concluding that the dispute presented a question of fact for the jury. Prism's claim that Sprint waived any challenge to this legal error is a non-starter. Sprint properly preserved its *legal* challenge, as Prism readily acknowledges. And while a remand for a new trial is the typical remedy for this type of error, "it is clear"—as Sprint showed—"that no remand is necessary … when the claim terms are properly construed, [and] no reasonable jury could have found" infringement under that construction. *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1320 & n.3 (Fed. Cir. 2016). Prism simply declines to do business with *Silver Spring Networks*.

Prism's arguments on the merits fare no better. The record is plain that Sprint's systems do not meet the properly construed claim limitation. Prism concentrates its "Internet Protocol network" arguments on Sprint systems that were not the basis of any damage claim whatsoever. The only system for which Prism claimed damages was the Ethernet backhaul system. To satisfy the "Internet Protocol network" limitation, the Ethernet backhaul system must, among other things, be a "public network with no controlling organization." But, as Sprint showed, Prism created a genuine dispute about the scope of that limitation that the district court failed to resolve. Prism does not argue otherwise. Instead, it tries to show that the facts meet its interpretation of the scope of the "public network with no controlling organization" element. In doing so, however, Prism merely begs the question concerning the scope of the asserted claims that the district court failed to resolve. That fundamental legal error warrants reversal. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

II. Reversal is also required for the independent reason that the district court allowed the jury to consider the AT&T Settlement

Agreement in violation of Federal Rules of Evidence 403 and 408. Sprint demonstrated that the AT&T Settlement Agreement, like the agreement held inadmissible in *LaserDynamics*, falls far outside the narrow exception to the presumption that settlement agreements are inadmissible to prove damages. Prism offers nothing to overcome Sprint's showing that the AT&T Settlement Agreement is [redacted] than Prism's other settlement amounts and was entered into [redacted] coercive environment of litigation. Nor does Prism offer any basis to admit the AT&T Settlement Agreement under Rule 408, which bars the use of settlements to prove damages or liability. Prism's arguments to the contrary ignore the language and history of Rule 408, as well as this Court's interpretation of the rule.

Prism's contention that it relied on the AT&T Settlement Agreement only to prove damages is wrong as a factual matter and irrelevant as a legal one, given that both Rule 403 and Rule 408 prohibit the use of such settlements to establish damages. Prism's response also does nothing to refute that the district court failed to analyze the admissibility of the AT&T Settlement Agreement: none of

Prism's myriad record citations contains anything that could remedy this failure.

III. Prism's damages argument is equally unavailing. It completely fails to grapple with the language of the patents that clearly demonstrate that Prism did not invent the Ethernet backhaul on which the entirety of its damages theory is premised. Moreover, Prism ignores its own characterizations of the claimed invention, which had nothing to do with backhauls of any sort. Yet, Prism's damages theory is based on the cost to build an Ethernet backhaul. This violates the Court's command that damages must be carefully tied to the claimed invention. And even on its own terms, Prism's damages theory is divorced from any actual costs to build an Ethernet backhaul and is based on vague and unreliable estimates that lack any foundation in actual analysis or valuation expertise.

IV. Even though the Court should reverse or vacate the judgment and award of damages against Sprint, Prism raises a cross-appeal of the district court's refusal to award supplemental damages or an ongoing royalty. But the district court was well within its discretion in determining that the jury's award (if allowed to stand) provided Prism

complete relief for past, present, and future infringement. The district court's interpretation of the verdict is supported by the verdict form and jury instructions; by the extensive evidence at trial that Prism's licenses were [redacted]; by Prism's insistence through counsel, fact witnesses, and its damages expert that the appropriate damages measure is based on [redacted] licenses; and by Prism's own damages theory. Prism's cross-appeal should be rejected.

## ARGUMENT

### I. THE JUDGMENT OF INFRINGEMENT RESULTED FROM THE DISTRICT COURT'S FAILURE TO RESOLVE A DISPUTE ABOUT CLAIM SCOPE AND CANNOT STAND.

District courts have an ongoing obligation to resolve disputes about the scope of claims. *Silver Spring Networks*, 815 F.3d at 1319–20 (explaining that after claim construction the "court remained obligated to provide the jury with a clear understanding of the disputed claim scope"). After the district court here construed the asserted claims, Prism—through its expert—altered the court's construction of the "public network with no controlling organization" element of the "Internet Protocol network" limitation. Sprint challenged Prism's expert, illustrating the genuine dispute between the parties created by

Prism over the scope of the limitation. Rather than resolve that dispute, however, the district court considered it an issue of fact that Prism could submit to the jury. In doing so, the district court violated its duty to resolve all disputes about claim scope. Opening Br. 41–47. This error was compounded by Prism's alteration at trial of the "path to access" element of the "Internet Protocol network" limitation. These errors led to the finding of infringement and require reversal. *Id.* at 36–47.

Prism tries to defend the judgment by claiming waiver, and then attempts to confuse the legal issues and factual record to mask the district court's errors. Neither tactic is availing. This Court should reverse.

### A. The Court Can Reverse the Judgment of Infringement.

Prism first contends that Sprint failed to raise its argument in its JMOL motion, that this means "Sprint waived any challenge to the district court's judgment of infringement," and that "the judgment of infringement should be affirmed" on this basis "alone." Response Br. 21–22. Prism's argument is meritless.

Sprint demonstrated that the district court erred as a matter of law in failing to resolve a dispute about the scope of the asserted claims.

Opening Br. 40–47. Sprint properly raised that argument in its motion for a new trial, and so that legal issue is properly before the Court, as Prism acknowledges. Response Br. 32; Appx23907–34. And, as Sprint showed (Opening Br. 40), while a new trial is the usual remedy for a district court's failure to resolve a dispute about claim scope, "a new trial is not necessary when, as here, the record evidence does not support an infringement verdict under the correct construction of the claim." *Silver Spring Networks*, 815 F.3d at 1320 n.3; *id.* at 1320 ("it is clear that no remand is necessary because, when the claim terms are properly construed, no reasonable jury could have found that Silver Spring's electric utility meters infringe."). Prism has no response whatsoever to this holding in *Silver Spring Networks*.[1]

### B. The District Court Erred in Failing to Resolve a Dispute Over Claim Scope.

As Sprint showed, the district court committed reversible error by failing to resolve disputes about the scope of the "Internet Protocol

---

[1] Not raising an argument in a JMOL motion means that a court of appeals cannot review a sufficiency of the evidence challenge on that issue. *EEOC v. Sw. Bell Tele., L.P.*, 550 F.3d 704, 708–09 (8th Cir. 2008) (not making a Rule 50(b) motion precludes review of "a sufficiency of the evidence argument"). But Sprint is not raising a sufficiency of the evidence challenge. It showed that the district court committed legal error.

network" limitation. Opening Br. 40–47. Prism tries to confuse both the legal and factual issues in an attempt to mask the district court's errors, but neither tactic succeeds.

### 1. Prism's legal responses are meritless.

Prism first suggests that there was "no dispute on claim construction for the jury" because the district court "instructed the jury on the very construction that Sprint advocated for the IP Network limitation." Response Br. 34. But the mere fact that the Court used the terms that Sprint advocated says nothing about the parties' dispute about the scope and meaning of *those* very terms. As Sprint showed, the parties presented the district court with a genuine disagreement about the scope of the terms adopted by the court, as demonstrated by Prism's insertion of the word "single" into the "public network with no controlling organization" element of the court's construction. Opening Br. 41–47. This violated the fundamental principle identified in cases such as *O2 Micro* and *Silver Spring Networks* that district courts have an ongoing duty "to resolve a dispute about claim scope that has been raised by the parties." *Silver Spring Networks*, 815 F.3d at 1319.

Prism contends that *O2 Micro* and *Silver Spring Networks* are inapposite. Response Br. 35. Prism is wrong. It argues that in these cases "the district courts declined to construe disputed claim terms, resulting in the parties presenting competing arguments regarding the meaning and scope of claim terms to the jury." Response Br. 35. But that is what occurred here. Sprint and the other defendants identified a fundamental dispute about the scope of the district court's construction of the "Internet Protocol network" limitation. Even the district court recognized that the argument was about whether the court's construction or "Minor's interpretation" should govern. Appx91. Rather than resolving the dispute about claim scope, the court erroneously concluded that the issue was "a question of fact" that could be presented at trial and, thus, allowed Prism to present its view of the construction, as well as related evidence, to the jury. Appx94; Opening Br. 44. This is precisely the error identified in *O2 Micro* and *Silver Spring Networks*—"the court left [the] question of claim scope unanswered, leaving it for the jury to decide." *Silver Spring Networks*, 815 F.3d at 1319.

Prism also tries to distance this case from *Silver Spring Networks* and *O2 Micro* by arguing that the district court considered Sprint's

argument, rejected it, and instructed the jury on the initial terminology proposed by Sprint. Response Br. 35. However, this Court rejected a similar argument in *Silver Spring*—"simply rejecting one proposed construction" in favor of another does not "resolv[e] the relevant dispute." 815 F.3d at 1320. The district court "remained obligated to provide the jury with a clear understanding of the disputed claim scope." *Id.* The trial court breached its duty by allowing Prism to raise questions[2] and argument directed to a "single controlling organization." And the "continuing debate" about the scope of the claims "belies" any notion that the court performed its duty. 815 F.3d at 1320.

Prism argues further that this case is distinguishable and involves attorney argument rather than a dispute about claim scope because "Sprint never sought clarification or a limiting instruction during trial" and "never raised any issue after Prism's opening argument." Response Br. 33, 34. Prism's argument is misguided. Sprint raised the parties' dispute about claim scope prior to trial—soon after Prism submitted its expert's report—and requested that the district court resolve that

[2] *See, e.g.,* Appx28060–61 (Tr. 485:25–486:1); Appx27480 (Tr. 1017:3–4; 1017:12–13; 1017:22–24); Appx27482 (Tr. 1019:2–5); Appx39965 (Tr. 91:18–19); *see also* Appx27743–44 (Tr. 1280:18–1281:16); Appx27751 (Tr. 1288:12–16).

dispute. Appx85–94. The district court erred by refusing to do so, and Prism points to nothing that required Sprint to raise the same objection and argument a second or third time after the court's pre-trial ruling.

Moreover, the fact that Sprint raised this legal dispute prior to trial distinguishes this case from the cases relied upon by Prism, which involved post-trial "attorney argument." Response Br. 33–34. Unlike *Function Media, LLC v. Google, Inc.*, 708 F.3d 1310 (Fed. Cir. 2013), or *Verizon Services Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325 (Fed. Cir. 2010), this is not a case in which the dispute arose solely in post-trial briefs, or during closing argument, as post-hoc arguments by counsel. *Function Media*, 708 F.3d at 1326 (likening the case to *Verizon* where "the parties did not bring a dispute about claim scope to the district court's attention prior to the close of evidence" but only at jury instruction phase). Here, Sprint did not wait until the close of trial to raise the dispute about the scope of the "Internet Protocol network" limitation for the first time. It raised the dispute soon after the *Markman* order and the submission of Prism's expert report. The district court refused to resolve the parties' dispute and erroneously allowed the issue to be presented to the jury. That was reversible error.

### 2. Prism's reading of the record is unsupported.

Prism does not even attempt to respond to Sprint's demonstration that the district court erred in concluding that the dispute about claim scope posed a factual issue. Opening Br. 41–45. Instead, Prism contorts the factual record to suggest that there is no dispute about claim scope and that its evidence fits within its own construction of the limitation. Response Br. 22–32, 36–42. Prism's arguments are unavailing.

*First*, Prism's entire argument regarding "Internet Protocol network" (and its presentation of the case) hinges on confusing the distinct Sprint systems at issue. The only system on which Prism sought and received any damages involved the use of private Ethernet backhauls supplied by AAVs. *See* Opening Br. 37; Appx27227 (Tr. 764:3–8). Throughout its brief, however, Prism attempts to conflate matters by asserting in various ways that "the Internet was used for Sprint's Backhaul Network," (Response Br. 24), or "the Backhaul Network is the Internet," *id.* at 36. But Prism is not referring to the Ethernet backhaul supplied by AAVs that form the only basis for its damages theories when making these statements; it is referring to different Sprint systems that do not use an Ethernet backhaul. In these

systems, as Sprint explained, femtocells, picocells, and [redacted] essentially replace the cell tower-base station combination used in the majority of Sprint systems, and user data does not travel [redacted]. Opening Br. 19–20. As Sprint further showed and was undisputed, these unique systems account for a mere [redacted] of the data traffic on Sprint's overall system, *id.*, far from the "overwhelming majority" that Prism suggests is at issue with these (Response Br. 29), particularly in view of the undisputed testimony that the amount of data on picocells was [redacted], Appx27502 (Tr. 1039:2–5); Appx27548 (Tr. 1085:7–16). Moreover, Prism did not claim any damages from the femtocell, picocell, or [redacted], focusing instead exclusively on the Ethernet backhauls that are owned and operated by private AAVs.

*Second*, the arguments that Prism does make with regard to the Ethernet backhauls at issue are meritless. As Sprint showed, Prism created a dispute about the scope of the "public network with no

controlling organization" element of the "Internet Protocol network" limitation by contending that there must be "no *single* controlling organization" and that this element is met because no single organization controls [redacted] AAVs. Opening Br. 41–43. Prism repeats that theory here (Response Br. 37) but contends that other aspects of its expert's testimony show that "use of the word 'single' … does not amount to a change in claim construction," *id.* at 39. But the testimony Prism points to is merely its expert's general conclusions. Appx26942–43 (Tr. 479:17–480:6); Appx26946–48 (Tr. 483:18–485:14).[3] When Prism attempts to actually explain its expert's theory, it again runs squarely into the dispute between the parties, contending that there is no controlling organization because there are multiple Ethernet backhaul providers and "'each control their own piece but there's not a *single* controlling organization.'" Response Br. 39 (quoting Appx26948–

[3] Prism's expert references the use of protocols in sending user data at Appx26942–43 (Tr. 479:17–480:6), but the use of protocols is addressed elsewhere in the construction of "Internet Protocol network," which in addition to the "public network with no controlling organization" and "path to access" elements requires "at least one of IP, TCP/IP, UDP/IP, HTTP, and HTTP/IP." Appx45.

49 (Tr. 485:24–486:1)) (emphasis added).[4] In any event, whether Prism's theory is consistent with the scope of the "Internet Protocol network" limitation is precisely the dispute that the district court failed to resolve.

Prism also argues that "Sprint's view" that each Ethernet backhaul is privately owned and operated and therefore the "public network with no controlling organization" element is not met "would result in the conclusion that the Internet" as the preferred embodiment "would not satisfy the IP Network limitation." Response Br. 37. Prism's argument is misguided. The claimed invention, in Prism's own words, is directed toward security for an account holder to access protected information over an untrusted network like the Internet, which, as Prism asserts, may be "a network made up of many networks." Response Br. 38; Appx155 (explaining that the field of invention is an account holder who accesses protected information over an untrusted network). But in Sprint's system, an account holder accesses

[4] Similarly, Prism omits the multiple instances where its counsel inserted the word "single" into the court's construction of "public network with no controlling organization" when questioning witnesses. *See, e.g.,* Appx27480 (Tr. 1017:3–4, 1017:12–13, 1017:22–24); Appx27482 (Tr. 1019:2–5); Appx39965 (Tr. 91:18–19).

information over an Ethernet backhaul connection from Sprint's base station to the data center that is dedicated and controlled by a private AAV who, as Prism concedes, controls that backhaul. Appx26948–49 (Tr. 485:1–5, 485:17–486:1).

Nothing in "Sprint's view would result in the conclusion that the Internet would not satisfy the IP Network limitation," Response Br. 37. Prism's argument is simply divorced from the purpose of the claimed invention, which is to enable an account holder to access protected information over an untrusted network. According to Prism, the account holder and the particular network over which the account holder is accessing information are irrelevant. But Prism cannot merely ignore the network over which the account holder is accessing information—in the asserted claims, it is the open Internet or other untrusted network; in Sprint's system, it is the Ethernet backhaul, a privately owned and controlled secure connection between the base station and Sprint's data center.

Moreover, Prism completely ignores the fact that the network must be "public," and [redacted] Opening

Br. 38–39. Prism tries to subtly push back on this by asserting that the Ethernet backhaul is "shared" among users (*e.g.*, Response Br. 12, 29, 30), but it offers nothing to counter the concession that a [redacted] is a "trusted private network." Appx26925 (Tr. 462:8–13); Opening Br. 38–39.[5]

Prism takes a different tack elsewhere in its brief. It contends that the physical cable that underlies the Ethernet backhaul also underlies the Internet—because a separate layer may carry Internet traffic—and therefore it is "simple logic" that "if the Internet is an IP Network, and the Backhaul Network makes up the Internet, then the Backhaul Network is an IP Network." Response Br. 24–25. Prism's argument is a logical fallacy (actually termed the fallacy of division).[6] Merely because

---

[5] Prism similarly ignores the fact that Sprint's femtocell, picocell, and [redacted] *See* Appx27548–49 (Tr. 1085:24–1086:22); Appx27551–54 (Tr. 1088:5–22, 1089:10–1091:21); Appx27561–62 (Tr. 1098:22–1099:5); Appx26612 (Tr. 149:17–21).

[6] As Sprint demonstrated, the Ethernet backhaul for Sprint operates on a different layer and uses different technologies with different protocols than the Internet. Appx27380 (Tr. 917:12–18); Appx27579 (Tr. 1116:8–10); Appx27581 (Tr. 1118:5–24). Prism's expert admitted that the Ethernet backhaul operates on a different layer than

the sum of various parts has a characteristic does not mean the various parts also have that same characteristic. Prism's contention does not withstand scrutiny.[7]

Ultimately, Prism's various arguments cannot mask the fact that the parties disputed the scope of the "public network with no controlling organization" element of the "Internet Protocol network" limitation, and the district court failed to resolve that dispute.

### 3. Prism has no real response on the "path to access" dispute.

As Sprint showed, Prism compounded the district court's error in not resolving the parties' dispute about the "no controlling organization" element by attempting to redefine the "path to access" element of the "Internet Protocol network" limitation. Opening Br. 45–46. In

---

the Internet. Appx27034–35 (Tr. 571:24–572:7); Appx26994–95 (Tr. 531:9–12; 532:13–22); Appx26937 (Tr. 474:5–9).

[7] Prism contends that Sprint's documents confirm that the Ethernet backhaul is "untrusted" because those documents [redacted]. Response Br. 29. But nothing in those documents suggests that Sprint was using the term "untrusted" as the district court defined that term, nor do they reference the "public network with no controlling organization" element of the court's construction. Similarly, Prism points for the first time to a Sprint document that uses the term "IP Network," again taking language out of context where nothing in the document suggests that Sprint was using the term "IP Network" as construed by the court. Response Br. 27.

particular, Sprint demonstrated that Prism altered the scope of the claim element by arguing that it required the "path *through* the network to access" the data center be undefined, rather than the "path to access the network"—here, the Ethernet backhaul—be undefined. *Id.* Under Prism's theory, the definition of "Internet Protocol network" no longer looks to how data accesses the network, but how it ultimately accesses the data center, effecting a fundamental revision of the limitation. *Id.*

Prism has no effective response to Sprint's argument. Instead, Prism simply repeats its theory, referencing its expert's testimony that a user's "'path to access the network is going to change. [She'll] change cell sites and the path *through the network* to access the core [network] changes as you travel on down to Phoenix.'" Response Br. 41 (emphases deleted). But merely repeating the theory does nothing to respond to Sprint's showing that Prism sought to fundamentally revise this element of the "Internet Protocol network" limitation. As Sprint demonstrated, the court's construction stated that the "path to access" the network—here, the Ethernet backhaul—must be undefined. In Sprint's system, however, the path to access the Ethernet backhaul is

defined—the account holder's data travels from the phone to the cell tower to the base station to the Ethernet backhaul. Opening Br. 39. Rather than confront this evidence, Prism simply redefined the "path to access" element and improperly altered the scope of the asserted claims.

## II. THE DISTRICT COURT ERRED IN ADMITTING THE AT&T SETTLEMENT AGREEMENT.

The district court committed multiple errors in allowing Prism to introduce the AT&T Settlement Agreement at trial. Prism's response offers nothing that would enable it to shoehorn the outlier AT&T Settlement Agreement—reached [redacted] the coercive environment of litigation—into the rare exception to the presumption of inadmissibility established by this Court's precedents. And Prism likewise offers no basis for admitting the AT&T Settlement Agreement under Rule 408. Nor could it, given the Rule's plain prohibition on admission of such settlements to prove either damages or liability.

### A. Admission of the AT&T Settlement Agreement Violated Rule 403.

This Court's precedents make clear that settlement licenses are presumptively inadmissible under Rule 403 to prove damages. Use of such agreements to prove damages is barred in all but an extremely narrow set of circumstances. *LaserDynamics, Inc. v. Quanta Computer,*

*Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012).[8] The AT&T Agreement—entered into [redacted] Prism's other licenses—is "well outside" the "limited scope of circumstances" that can overcome this presumption of inadmissibility.

1. In erroneously allowing Prism to introduce the AT&T Agreement at trial, the district court failed to analyze the agreement, Rule 403, Rule 408, or this Court's precedents. In an attempt to mask the district court's lack of analysis, Prism strings together a long list of duplicative citations to the record without explaining their relevance. Response Br. 45–46 & n.2. None of the citations reflects any analysis of the AT&T Agreement under Rule 403 or 408 by the district court. The vast majority of Prism's record citations are not even court rulings, but rather are citations to briefs filed by the parties: Sprint's briefs in support of its motion in limine and *Daubert* motion, in opposition to Prism's supplemental expert reports, and in support of its new trial

---

[8] Prism's reliance on *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308 (Fed. Cir. 2014), is thus entirely misplaced. *VirnetX* did not address whether the licenses arose from litigation. *Id.* at 1330–31.

motion;[9] Prism's own briefs;[10] and briefs in the separate T-Mobile case.[11] The only district court rulings Prism cites do not mention Rule 403 or 408, expressly decline to consider admissibility, or address a *different* settlement in the separate AT&T case.[12]

---

[9] Appx17634–44, 17647–57; 17652–57 (Sprint's *Daubert* motion to exclude Malackowski); Appx13294–97, 13300–04, 13309–10 (cited twice) (opposition to Prism's supplemental expert reports); Appx23903–05 (brief in support of its new trial motion); Appx19351–63 (cited twice) (brief in support of its motion in limine); Appx21143–51 (reply in support of its motion in limine); Appx19893–909 (reply brief in support of *Daubert* motion); Appx23876–907 (new trial motion).

[10] Appx13110–12, 13106–07 (Prism's brief in support of its motion for leave to file supplemental expert reports); Appx13349–57 (Prism's reply in support of its motion for leave to file supplemental expert reports); Appx18743–69 (Prism's opposition to Sprint's *Daubert* motion); Appx20252–71 (Prism's opposition to motion in limine); Appx28990–29021 (Prism's opposition to new trial motion).

[11]Appx13327.0001–.0027 (Defendants' brief in opposition to Prism's motion to file supplemental expert reports in separate T-Mobile case, No. 8:12-cv-125 (D. Neb.)); Appx13373.0021–0031 (Prism's reply in support of motion to file supplemental expert reports in separate U.S. Cellular case, No. 8:12-cv-125 (D. Neb.)).

[12] Appx13382 (citing Appx13095.0002–.0006) (district court ruling on Prism's motion to file supplemental expert reports expressly declining to rule on admissibility, 13383, and citing without explanation its limited analysis of a different settlement in separate AT&T case, No. 8:12-cv-122 (D. Neb.)); Appx18828–29 (largely redacted district court discussion of different settlement in different case); Appx13379–85 (district court ruling on Prism's motion to file supplemental expert reports expressly declining to rule on admissibility, Appx13383); Appx95–101 (district court ruling on Sprint's *Daubert* motion with no mention of the AT&T settlement, Rule 403, Rule 408, or any of the

As a result, it is unsurprising that Prism cannot quote a single passage from the district court explaining its decision to admit the AT&T Agreement in this case. The only ruling Prism discusses in any detail is one in which the district court expressly *declined* to address admissibility, Appx13383, and included a single bare citation to a limited analysis of a different settlement agreement in a different case. Response Br. 45–46. The court's consideration of a different settlement cannot substitute for analysis of the settlement agreement Prism introduced against Sprint here. The [redacted] settlement differs in important ways from the AT&T Settlement, most notably, the amount of the [redacted] was more in line with Prism's other settlements, not [redacted] like the AT&T settlement. Moreover, the [redacted], unlike the AT&T Settlement, [redacted], and it was not reached [redacted]. Appx25476–77 (Tr. 667:25–668:16). Finally, based on the redacted version of the decision provided by Prism, it

authorities cited by Sprint in its post-trial motion); Appx105 (district court's single-word denial of Sprint's motion in limine); Appx4–6 (district court ruling on new trial motion with no mention of the AT&T settlement, Rule 403, Rule 408, or any of the authorities cited by Sprint in its post-trial motion).

appears that the district court did not conduct a full independent analysis of the [redacted] under Rule 403 or 408, expressly limiting its analysis to the "narrower question" of "whether the [redacted] is the 'most reliable license in [the] record.'" Appx13095.0005.

In any event, even if the district court had fully addressed and rejected Sprint's arguments on the merits in initially admitting the AT&T Settlement, the court still had an obligation to consider Sprint's post-trial briefs on the issue and correct its error in admitting the settlement. But in ruling on Sprint's motion for a new trial, the district court failed to address any of Sprint's arguments or even to mention the AT&T Settlement or either of the Federal Rules of Evidence that bars its admission.

2. Had the district court analyzed this Court's precedents as applied to the AT&T Agreement, it would have recognized that the agreement, like the agreement this Court excluded in *LaserDynamics*, stands in "stark contrast" to the kind of agreement that fits under the narrow exception to the presumption of inadmissibility.

Seeking to downplay the similarity between the AT&T Agreement and the *LaserDymanics* settlement, Prism contends that each of the features of the AT&T Agreement alone cannot render it inadmissible. But both the *LaserDynamics* settlement and the AT&T Settlement present a set of characteristics that, evaluated as a whole as this Court did in *LaserDynamics*, removes them from the narrow exception to the general rule of inadmissibility. Both settlement licenses were [redacted] plaintiff's other license amounts; indeed, the AT&T settlement—[redacted] Both were executed years after the hypothetical negotiation date and were less reliable than other licenses.[13] And most significantly, both settlements were "tainted by the coercive environment of patent litigation" and thus were "unsuitable to prove a reasonable royalty." *LaserDynamics*, 694 F.3d at 77. Here again, the AT&T Settlement

[13] Unlike Prism's other licenses, the AT&T Settlement was not [redacted]. Appx27170–71 (Tr. 707:1–708:24); Appx25537 (Tr. 728:7–16). Prism is therefore wrong when it asserts that like the AT&T Settlement, "Prism's other settlements … [redacted]," Response Br. 49.

presents an even starker case for exclusion than the *LaserDynamics* settlement: the AT&T Settlement agreement was entered into [redacted].[14]

Although acknowledging that the AT&T Agreement covered [redacted], Prism contends that the AT&T Agreement was nonetheless "highly probative" of damages because the agreement stated that the [redacted] payment was consideration for [redacted]. Prism has no response, however, to Sprint's showing (Opening Br. 52) that the [redacted] in licensing fees for Prism. Prism does not explain why, if Prism genuinely believed AT&T would [redacted] Moreover, Prism's own expert acknowledged that [redacted] useful to

[14] These characteristics also set the AT&T Settlement far apart from Prism's other licenses that [redacted].

AT&T. Appx27292–93. In any event, a license in an amount [redacted] any other license to the patents in suit and that covers [redacted] is clear from the evidence cannot overcome the presumption of inadmissibility of settlement licenses.

Prism's final argument—that the settlement is admissible because the jury heard evidence about the settlement (Response Br. 52)—is silly. Rule 403 exists to *preclude* the jury from hearing evidence whose probative value is substantially outweighed by the likelihood of unfair prejudice. And this Court has recognized that settlement agreements by their nature, with only rare exceptions, create a danger of unfair prejudice that substantially outweighs any probative value. The AT&T Agreement highlights this danger: after hearing repeatedly about the [redacted] AT&T Agreement, the jury awarded damages of $30 million, essentially requiring Sprint to pay [redacted] a penalty.

The inherent unfair prejudice of relying on the AT&T Agreement to prove damages was exacerbated in this case because Prism also used the AT&T Agreement to convince the jury that Sprint was liable for

infringement.[15] That Prism did not introduce this evidence through its infringement *experts* is irrelevant. Prism made the AT&T Settlement Agreement a central theme of the trial, starting with its opening statement and repeating it through witness testimony, including fact witness Duman, all the way through its closing argument. Throughout the trial, Prism spun the story that AT&T and Sprint are the same, that they both engaged in the same activity with regard to the asserted claims, that AT&T settled with Prism [redacted], and that Sprint is equally liable and should pay even more in damages as a penalty.

---

[15] Prism mischaracterizes Sprint's argument in stating that Sprint's prejudice argument is based solely on Prism's use of the AT&T Agreement to prove liability. Response Br. 53. To the contrary, Sprint's argument is that admitting the AT&T Agreement was inherently prejudicial on the question of damages and that such prejudice was *exacerbated* by Prism's use of the agreement to also establish liability. Sprint's opening brief explained that under *LaserDynamics*, admitting the AT&T Agreement to prove *damages* violated Rule 403, *i.e.*, that the risk of unfair prejudice outweighed any probative value of introducing the settlement. *LaserDynamics* held that such settlements are inadmissible without any additional showing of prejudice beyond that related to damages. Here, the prejudice was even greater because Prism used the Agreement for liability purposes as well. As Sprint explained, the unfair prejudice included Prism's use of the AT&T Agreement "to suggest that Sprint was liable for infringement *and* should be required to pay even more than the [redacted] settlement amount." Opening Br. 53 (emphasis added).

Prism's statement (Response Br. 53) that its reference to the Agreement in its opening and closing arguments was "limited" to explaining damages does not withstand scrutiny. In opening, Prism's counsel invoked the AT&T Settlement Agreement as its very first point after explaining the background of the patents, and he did so in a way that plainly suggested the liability theme that Prism would develop throughout the trial. He stated AT&T took a license to the patents "[w]hile this case is going on" and that AT&T got a discount "[redacted]." Appx26358–59 (Tr. 64:24–65:5). In other words, AT&T was liable, and [redacted] it would have had to pay even more. He went on to state that Sprint would not get such a discount. Appx26359 (Tr. 65:8).[16] The implication was clear: AT&T and Sprint were equally liable, and Sprint should pay even more for not settling.

---

[16] Prism contends, Response Br. 53, that this statement was "premised on" the Agreement's reference to a [redacted]. But counsel's statement emphasized the [redacted] *See also* Appx27934 (Tr. 1471:2–5) (closing argument emphasizing distinct "discounts" for [redacted]).

In closing, Prism's counsel again equated AT&T and Sprint for liability purposes. Although ostensibly discussing "damages," Prism's counsel said "at the end of the day, what this case is really going to be about is damages. I told you we have licensed these patents just recently, a few months ago, and that was to AT&T. *Sprint's up now*." Appx27912 (Tr. 1449:6–9) (emphasis added). In other words, the only issue in the case is damages because Sprint's liability is established. Prism's counsel continued: "They want to minimize damages. They don't want to pay *for their use of these patents*." *Id.* (Tr. 1449:9–10) (emphasis added). Again, the implication was clear—AT&T paid for its use of the patents, Sprint uses the patents just like AT&T, and therefore Sprint must likewise pay. *Id.* Prism's counsel then reiterated that AT&T got a discount because "[redacted]." Appx27933–34 (Tr. 1470:25–1471:2). Prism's counsel used the AT&T Agreement not only to prove damages, which is unfairly prejudicial in and of itself, but also to tell the jury that it should find Sprint liable.

And between the opening and closing arguments, Prism's counsel pursued this theme relentlessly. He elicited testimony from Mr. Duman

that AT&T and Sprint were very similar companies using the patents in the same way. Appx27155–57 (Tr. 692:21–694:1). And he extracted testimony that Prism was "involved with litigation with AT&T *on the same patents for essentially the … same activity*," Appx27146 (Tr. 683:2–3) (emphasis added), plainly equating AT&T's and Sprint's behavior with regard to the patents. Mr. Duman further testified that AT&T [redacted]." *Id.* (Tr. 683:4–6). Prism's counsel then emphasized the [redacted] two more times, asking Mr. Duman to again state that the settlement [redacted] Appx27148 (Tr. 685:1–6), and then asking him to specify even further [redacted] drawing out testimony that the agreement [redacted] *Id.* (Tr. 685:7–10). The only possible reason for placing such heavy emphasis on the [redacted] was to suggest to the jury that AT&T settled [redacted] and that the jury in Sprint's trial should reach the same conclusion. Prism's damages expert

Malackowski likewise equated the AT&T Settlement with liability, stating that the Settlement showed "a very credible company that has validated the use of the inventions." Appx27256–57 (Tr. 793:21–794:4).

Finally, Prism seeks to place the blame for its improper use of the AT&T Settlement Agreement at Sprint's feet, pointing to Sprint's reference to the agreement in its closing argument. But after a trial that was pervaded by Prism's repeated suggestions and assertions that Sprint was liable based on the AT&T Settlement Agreement, Sprint's counsel had no choice but to try to respond to Prism's improper argument. Admission of the AT&T Settlement Agreement violated Rule 403 and requires a new trial.

### B. Admission of the AT&T Settlement Violated Rule 408.

A new trial is also required for the independent reason that admission of the AT&T Agreement violated Federal Rule of Evidence 408. By its terms, Rule 408 prohibited Prism from introducing the AT&T Settlement to prove damages or Sprint's liability. Prism's arguments to the contrary simply ignore the Rule's plain language.

Rule 408 bars evidence not only of settlement offers and negotiations but also evidence of "*furnishing* … *or accepting* … a

valuable consideration in compromising … the claim." Fed. R. Evidence 408 (emphasis added). Prism does not even attempt to reconcile the Rule's text in suggesting that it only applies to settlement offers or negotiations. Response Br. 44. Indeed, this Court has recognized that Rule 408 applies to negotiations and settlements alike. In *MTSG*, this Court explained that "[i]n adopting Rule 408 of the Federal Rules of Evidence, Congress directly addressed the admissibility *of settlements* and settlement negotiations." *In re MTSG, Inc.*, 675 F.3d 1337, 1343 (Fed. Cir. 2012) (emphasis added); *see also id.* at 1344 ("The rule is clear by its text and history that it covers not only *settlements* and negotiations between the parties to the lawsuit, but also *settlements* and negotiations involving a third party.") (emphases added).

Moreover, in *LaserDynamics*, this Court it recognized in discussing Rule 408 that "[t]he propriety of using prior settlement *agreements* to prove the amount of a reasonable royalty is questionable." *LaserDynamics*, 694 F.3d at 77 (emphasis added). The Court even quoted the Supreme Court's statement in *Rude v. Westcott*, 130 U.S. 152, 164 (1889), that "'*[A] payment of any sum in settlement* of a claim for an alleged infringement cannot be taken as a standard to

measure the value of the improvements patented, in determining the damages sustained by the owners of the patent in other cases of infringement." *LaserDynamics*, 694 F.3d at 77. Nothing in Rule 408's text suggests any different treatment under the rule between settlement offers and settlement agreements.

By its terms, Rule 408 also applies to Prism's use at trial of its own settlement with AT&T. Prism relies on the 1972 Advisory Committee note to contend (Response Br. 44) that Rule 408 does not apply because Sprint was not a party to the AT&T Settlement. But Prism ignores the 2006 amendments that added the phrase "on behalf of any party" to make clear that Rule 408 "excludes compromise evidence even when a party seeks to admit its own settlement offer." Fed. R. Evid. 408 (2006 Advisory Committee note). Prism also ignores this Court's interpretation of Rule 408 as covering "not only settlements and negotiations between the parties to the lawsuit, but also settlements and negotiations involving a third party." *In re MTSG*, 675 F.3d at 1344.

As Sprint noted in its opening brief (at 56–57), courts have accordingly recognized that Rule 408 bars admission of settlements

with third persons to prove damages or liability on the part of a defendant that was not a party to the settlement. Prism attempts to discount some of these cases because they do not involve patent settlements, but Prism offers no reason—and Rule 408 provides none—why Rule 408 would apply differently to patent settlements. Prism also contends these cases are inapplicable because they pre-date *ResQNet.com*. But *ResQNet.com* did not consider the admissibility of settlements under Rule 408 and thus does nothing to undermine prior holdings.

Prism quotes the statement in *AstraZeneca AB v. Apotex Corp.* that "there is no per se rule barring reference to settlements simply because they arise from litigation." 782 F.3d 1324, 1336 (Fed. Cir. 2015). But *AstraZeneca* did not mention Rule 408 and as support for this statement, the Court cited only *ResQNet* and a portion of a case relying on *ResQNet*, which as noted above did not address Rule 408.[17] Rule 408 plainly bars Prism's use of the AT&T settlement here.

---

[17] In addition, to the extent Prism relies on *AstraZeneca* in support of its Rule 403 argument, the settlement at issue in *AstraZeneca*, unlike the AT&T Settlement Agreement and the settlement excluded in *LaserDynamics*, came about only after the court had held the patents

For the first time, Prism contends that Sprint waived its Rule 408 argument. Not so. Sprint repeatedly argued before the district court that the settlement was inadmissible for the very reasons it now raises. In its motion in limine, for instance, Sprint quoted this Court's statement in *LaserDynamics* that "the propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable." Appx19352 (quoting *LaserDynamics*, 694 F.3d at 77). This Court made this statement in the context of addressing Rule 408 and cited for support the Supreme Court's holding that "a payment of any sum in settlement of a claim for an alleged infringement cannot be taken as a standard to measure the value of the improvements patented, in determining the damages sustained by the owners of the patent in other cases of infringement." *LaserDynamics*, 694 F.3d at 77 (quoting *Rude v. Westcott*, 130 U.S. 152, 164 (1889)).

Sprint also explained that settlement negotiations are "clearly excluded" by Rule 408. Appx19357. And in opposing Prism's experts, Sprint explained that: "As for the Prism v. AT&T settlement agreement itself, any discussion of it at trial creates a substantial risk that the jury

---

valid and infringed, 782 F.3d at 1336, and therefore differed from settlements entered into in the coercive environment of litigation.

will treat the agreement as evidence that Sprint infringes the asserted patents, which would highly prejudice Sprint," Appx13303,—a concern addressed by Rule 408's bar on admission of settlements to prove liability or damages. Sprint further fully briefed the Rule 408 issue in its post-trial briefs, Appx23897–98. In any event, Prism's waiver argument comes too late. In responding to Sprint's post-trial briefs, Appx23897–98, Prism acknowledged Sprint's Rule 408 argument, Appx29001, without ever suggesting that the argument was waived. *See Ringuette v. City of Fall River*, 146 F.3d 1, 4 (1st Cir. 1998) (party waives waiver argument by failing to assert it in response to post-trial motions).

The district court erred in admitting the AT&T Settlement agreement in violation of Rule 403 and Rule 408. This error requires a new trial.

## III. THE DISTRICT COURT ERRED IN ADMITTING PRISM'S DAMAGES ANALYSIS THAT IS NOT TIED TO THE FOOTPRINT OF THE INVENTION AND IS OTHERWISE UNRELIABLE

### A. Prism Did Not Invent the Ethernet Backhaul on Which It Based Its Damages Calculation.

Although acknowledging that "'proof of damages must be carefully tied to the claimed invention itself,'" (Response Br. 58 (quoting *Apple*

*Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1324 (Fed. Cir. 2014))), Prism based its proof of damages on the Ethernet backhaul, which Prism repeatedly conceded it did not invent. In Prism's own words, "Prism didn't invent … a new Internet or a new private network." Appx9707. Instead, the invention Prism claimed was a method and system to "allow devices to get authenticated to get access" to data. *Id*. The network was simply the "the motivating factor" for the claimed invention. *Id*.; *see also* Appx23080 (Prism's opposition to Sprint's motion for judgment as a matter of law explaining that Prism's method claims do not include a "step of 'carrying data' or the like" but instead, "the AAV backhaul network is the untrusted network over which Sprint passes protected computer resources to its customers *once the claimed four step method has been completed*") (emphasis added); Appx23080–81 ("The claims describe a method performed by an authentication server … in the *context* of an untrusted network (in this case the AAV backhaul networks) …") (emphasis in original); Appx23085 (Prism's system claims "as drafted, are limited to two components—an access server and an authentication server," not the Ethernet backhaul). Faced with its own repeated statements that it did not invent the Ethernet

backhaul on which it based its damages theory, Prism offers no response.

Prism also has no answer to the multiple passages in the patents themselves that establish that the untrusted network is not the claimed invention. Instead, the untrusted network is part of the prior art. Appx155, 223. The claimed invention, by contrast, is "a system for securing and tracking usage of transaction services or computer resources." *Id.* Such security systems are "*for use with* computer networks." Appx155 (emphasis added). Prism's claimed invention thus is not the untrusted network.

Notably, Prism carefully avoids asserting in its brief that it did invent the backhaul. Instead, Prism points to an isolated comment by Sprint during the *Markman* hearing as purportedly supporting the view that the backhaul network is part of the footprint of the claimed invention. Response Br. 58–59. Read in context, however, this statement clearly shows that Sprint was addressing only whether the claimed invention could be used with trusted networks or was instead limited to use with untrusted networks. *See* Appx9696 (Tr. 27:2–4) (quoting decision in related Delaware case that "'[t]he patent-in-suit

relates to a subscription access security system *for use with* untrusted computer networks'") (emphasis added); Appx9697 (Tr. 28:12–13) (quoting patent specification that "the present invention is particularly *adapted for use with* untrusted networks") (emphasis added); Appx9701 (Tr. 32:12–13) ("And those inventions, as disclosed to the PTO, all involved providing access to protected resources provided by an untrusted network.").

Accordingly, Sprint's position was not that the backhaul is part of the footprint of the invention, but rather has consistently been that the claimed invention is an authentication system limited *to use with* an untrusted (as opposed to a trusted) network. Indeed, Prism's counsel's plainly understood this to be Sprint's position, responding at the *Markman* hearing that "[defendants'] position clearly is that Prism has described its invention in a way that limits it *to use on* untrusted networks." Appx9704 (Tr. 35:22–24) (emphasis added). The other statement Prism cites likewise offers Prism no support. Sprint's damages expert stated only that the footprint of the invention is "related to" the backhaul, not that the backhaul is the footprint of the invention. Appx27825 (Tr. 1362:4–16).

That Prism's claimed invention is limited to authentication systems that operate in the context of untrusted, rather than trusted, networks does not mean that the claimed invention *is* the untrusted network. Prism's reliance on *University of Pittsburgh v. Varian Medical Systems, Inc.*, in this regard is nothing short of perplexing. *See* Response Br. 59–60 (citing 561 F. App'x 934 (Fed. Cir. 2014)). There, this Court contrasted two separate claims of the patent in suit. Claim 22 required "that the apparatus of claim 20 be configured *for use with* a beam generator" but "[did] not … require the beam generator *to be part of* the claimed apparatus." *University of Pittsburgh*, 561 F. App'x at 946 (emphasis added). Claim 38 by contrast "explicitly includes the beam generator as a component of the claim" and thus "contemplates that the RPM system and beam generator are incorporated into one apparatus," *id.* at 947. This Court vacated the damages award as to claim 22 because the damages *improperly included* the beam generator. *Id.* at 946. As demonstrated above, the claims at issue here do not include the Ethernet backhaul as a component of the claim or claim an invention incorporating the Ethernet backhaul into a single apparatus. Appx23085 (Prism describing its system claims as "limited to two

components—an access server and an authentication server”); Appx239 (claiming a system “for controlling access to protected computer resources provided via [an untrusted] network” where the claimed “system” comprises an authentication server and an access server). Instead, like claim 22 in the *University of Pittsburgh* patent, the patents in suit claim a system “*adapted for use with* an untrusted network.” Appx224 (emphasis added). By basing the damages calculation on the Ethernet backhaul, Prism failed to tie damages to the footprint of the invention.

### B. Prism Further Divorced Its Damages Analysis from the Footprint of the Invention by Basing the Purported Cost “Savings” on Leasing a Backhaul and on Features Wholly Unrelated to the Claimed Invention.

Acknowledging that it failed to measure actual cost “savings” even under its own incorrect view that damages may be based on the cost to build a backhaul, Prism tries to place the blame for its failure to prove damages on Sprint. Response Br. 61, 65. But the burden of proving damages by a preponderance of the evidence is on Prism, not Sprint. *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991) (“We agree with the district court that the amount of a

prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence."); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029 (Fed. Cir. 1996) (same) (citation omitted); *BIC Leisure Products, Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1217 (Fed. Cir. 1993) (same). Prism failed to meet its burden here.

First, Prism's expert based the purported cost "savings" not on what it would cost Sprint to build an Ethernet backhaul (which was the crux of Prism's damages theory) but rather on the amount Sprint pays to lease the backhaul. Prism contends that experts may use a "proxy" for actual damages, but, crucially, never explains why leasing costs are an appropriate proxy for building costs, particularly when leasing costs are a recurring expense unlike the one-time cost of building a backhaul. Prism cites cases approving use of certain sales data as a proxy for the sales of the accused products. Response Br. 61. But in those cases, the proxy matched the damages theory: both the proxy data and the damages theory were based on sales. Here, the purported proxy (actual, annual leasing costs) differs in kind from the damages theory (projected, one-time building costs).

Not only did Malackowski rely on a mismatched and inappropriate "proxy," he also based the damages amount on vague, unreliable, and wide-ranging guesses as to the relative costs of leasing versus building an Ethernet backhaul. Malackowski relied on Minor's wildly diverging estimates of the cost differential between leasing and building a backhaul, ranging from as little as two to three times the cost to "potentially" "more than five times" the cost. Not only is Minor's "estimate" wholly inadequate on its face, Minor himself lacks the necessary expertise and the necessary factual basis to offer such an opinion. Opening Br. 69. Prism contends that Minor's experience in building and leasing backhaul links qualified him to opine about the costs of building versus leasing an Ethernet backhaul, but Prism does not dispute that Minor lacks any expertise in valuation and accounting. And even if Minor "identified key considerations in building a backhaul network," (Response Br. 67), Prism does not dispute that Minor did not attempt to calculate costs based on such considerations and did not even consider actual mileage to cell sites, fiber costs, or circuit costs, Opening Br. 69. Likewise, Prism lauds Minor's discussion of a study that purported to estimate fiber cable costs ranging from $40,000 to

$250,000 per mile “depending upon geography, soil characteristics” (Response Br. 68) and whether the cable is buried or placed overhead. However, that very study shows the unreliability of Minor’s opinion: Minor failed to apply any of the identified factors or even the actual mileage of cable required for Sprint to build a replacement network.

In an effort to bolster Malackowski’s reliance on Minor’s overly expansive “estimate” that building a backhaul costs “two to three times … and … potentially … more than five times” the cost of leasing, Appx27231 (Tr. 768:6–9), Prism points to two studies that it contends provide support for Minor’s view. Contrary to the characterization in Prism’s brief (Response Br. 64), one of those studies does not even purport to compare the cost of leasing an Ethernet backhaul to the cost of building such a backhaul. Instead, it compares the cost of using Ethernet backhaul to the cost of using legacy systems. Appx39289 (Infonetics Research study “estimated that carrying cell-site traffic over Ethernet is six times cheaper than over legacy technologies.”). The other study presents flaws similar to those in Minor’s opinion, offering only a vague and conflicting estimate, which, as Minor described it, placed building costs at “two to three times the cost up to five *or many*

*more times* the cost" of leasing, Appx26991 (Tr. 528:4–5) (emphasis added), and also offering no analysis of Sprint's actual costs, Appx25879 (Tr. 1327:20–25).

Prism then points to testimony by Sprint witnesses that building a backhaul would be "very expensive" and "cost prohibitive." Response Br. 63. Prism cannot seriously contend that testimony that a purported alternative is "very expensive" meets Prism's burden to prove a reasonable royalty. Even more fundamentally, this testimony underscores the flaws in Prism's damages analysis: rather than attempting to establish cost savings based on a realistic noninfringing alternative to the claimed invention—such as one of the prior art authentication systems—Malackowski based his theory on an "alternative" that is not only untethered to the claimed invention but also wholly illusory.

Finally, Prism fails to explain how the inclusion in the damages calculation of costs for features wholly unrelated to the claimed invention satisfies the requirement that the patentee "seek only those damages attributable to the infringing features." *VirnetX, Inc.*, 767 F.3d at 1326. As Sprint demonstrated (Opening Br. 68), Malackowski's

analysis increases the royalty based on every dollar spent on fluctuating leasing costs that bear no relation to Prism's claimed authentication system. Prism has no response to Sprint's showing that Ethernet backhaul features, such as increased speed of repair or discounts for high volume usage, are totally unrelated to authentication. Prism merely asserts that it is appropriate to charge more if Sprint leases a "Cadillac" backhaul rather than a "Chevy" backhaul. Response Br. 64. But the use of the claimed invention is identical regardless of the pedigree of the Ethernet backhaul. And of course Malackowski's analysis does not purport to tie the increased costs of leasing a higher-performing backhaul to the actual costs of building a higher-performance backhaul or to link the increased costs of leasing a backhaul without receiving a high-volume discount to the costs of building a backhaul that carries lower volumes of data.

Prism contends (Response Br. 68–69) that *Home Depot* supports Malackowski's cost savings approach, but there the cost savings were tied to the invention (protective guards for saws), and compared the use of the invention to the prior art, (using saws without guards) which was a realistic and previously used alternative. *Powell v. Home Depot,*

*U.S.A., Inc.*, 663 F.3d 1221, 1240 (Fed. Cir. 2011). Here, Prism ties its "cost savings" analysis to the Ethernet backhaul that Prism admits it did not invent, and rather than determining cost savings based on prior art authentication systems, it purported to determine cost savings from building a new backhaul, an "alternative" that even Prism acknowledges was not a realistic possibility, Appx29216.

Prism also relies on *Riles* and *Monsanto*, but those cases likewise do not support Prism's position, which again depends on its erroneous view that the Ethernet backhaul is the footprint of the invention. In *Riles*, this Court rejected a cost savings approach that counted the full cost of the entire drilling platform when the invention was only a means to build a platform without using mud mats. *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002). Likewise here, Prism's cost savings approach counts the full cost of building a backhaul when the claimed invention is only a means of authenticating users to receive data over an untrusted network. That Prism did not attempt to go even further beyond the footprint of the invention to claim costs for "the entirety" of Sprint's network (Response Br. 69) does not validate its failure to "associate [its] proposed royalty with the value of the patented

method at all," *Riles*, 298 F.3d at 1312. And in *Monsanto*, unlike Prism's approach here, the costs savings were based on the costs of using the prior art (conventional seeds) versus the patented invention (herbicide-resistant seeds). *Monsanto Co. v. McFarling*, 488 F.3d 973, 980 (Fed. Cir. 2007) ("Because using conventional soybeans was the most logical alternative to either licensing or infringing, that value provided a reasonable basis for estimating the advantages conferred by the use of the patented technology.").

Prism's damages are untethered to the claimed invention and unreliable and should be vacated.

## IV. THE DISTRICT COURT APPLIED THE WRONG LEGAL STANDARD

As Sprint demonstrated (Opening Br. 58–61), the district court applied the wrong legal standard in ruling on Sprint's motion for a new trial and failed to consider the seven legal errors specifically identified in Sprint's new trial motion. Prism asserts that the court had "already fully considered and properly ruled on Sprint's challenges" by "previously denying Sprint's motions on these issues." Response Br. 71. But, as discussed above with regard to the improper admission of the AT&T Settlement, even if the district court had properly considered

Sprint's various motions and arguments before and during the trial—which it did not, *see supra* 5–6, 21–24—it still had an obligation to fully consider Sprint's motion for a new trial and to apply the correct standard. It wholly failed to do so.

Prism also contends that the district court's statement that "the key question is whether a new trial should have been granted to avoid a miscarriage of justice" necessarily indicates that the district court addressed the legal errors Sprint identified. Response Br. 71–72. This ignores, however, that the "miscarriage of justice" inquiry applies to all three reasons for granting a new trial: legal errors, excessive damages, and a verdict against the weight of the evidence. Opening Br. 60. The district court's ruling on its face is limited to evaluating the weight of the evidence. Appx5. The mere mention of "miscarriage of justice" says nothing about the court's failure to engage the legal errors identified by Sprint. Because the district court failed to recognize that a new trial may be warranted based on legal errors and to properly consider Sprint's arguments on this score, this Court should reverse the denial of a new trial.

## CROSS APPEAL

### I. THE DISTRICT COURT DID NOT ABUSE ITS BROAD DISCRETION IN DECLINING TO AWARD SUPPLEMENTAL DAMAGES AND ONGOING ROYALTIES.

Even if the Court upholds the judgment of infringement and award of damages—which it should not—it still should reject Prism's cross-appeal of the district court's refusal to award supplemental damages and an ongoing royalty.

Prism vastly overstates this Court's precedent in contending that a jury award must be interpreted to cover only past infringement absent "unequivocal evidence" that the award "covers both past and future damages," Response Br. 72. The *per se* rule Prism advocates directly conflicts with this Court's repeated recognition, including in the cases Prism cites, that district courts have broad discretion to determine whether an ongoing royalty is appropriate in a particular case. *Whitserve LLC v. Computer Packages, Inc.*, 694 F3d. 10, 35 (Fed. Cir. 2012); *Telecordia Tech., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1378 (Fed. Cir. 2010). As this Court explained in *Telecordia*, "[d]istrict courts have broad discretion to interpret an ambiguous verdict form, because district courts witness and participate directly in the jury trial process." 612 F.3d at 1378. District courts are thus "in a position to assess

whether the verdict figure represented past infringement as well as ongoing infringement." *Id.*

Prism seriously misreads *Whitserve* and *Telecordia*. In *Whitserve*, contrary to Prism's description, this Court did not hold "that the district court abused its discretion in finding a fully paid up license 'when the verdict form did not indicate that the award was meant to cover future use,'" Response Br. 72–73. Instead, it was the defendant that contended on appeal that the jury award constituted a paid-up license. This Court rejected the defendant's argument, in part because the district court "did *not* interpret the award" as covering future use. *Whitserve*, 694 F.3d at 35 (emphasis added). And in relying on the district court's interpretation of the award, this Court cited *Telecordia*'s explanation that "trial courts have discretion to interpret verdict forms." *Id.* Finding the district court's brief "treatment" of the plaintiff's motions for a prospective remedy "inadequate," however, this Court remanded for the district court to give "further consideration" to those motions "and to explain any decision it makes with respect thereto." *Id.* at 35, 36. Here, unlike in *Whitserve*, the district court expressly found that the verdict figure "represents the jury's award of a reasonable royalty to

compensate Prism for Sprint's past, present, and ongoing infringement." Appx12.

Prism's description of *Telecordia* is also significantly flawed. Prism quotes this Court's statement that "[i]n the absence of an express statement in the verdict, this court cannot determine whether the jury compensated [plaintiff] for all of [defendant's] infringing activities." Response Br. 73. But Prism fails to acknowledge the rest of this Court's reasoning in the very same paragraph: because "*this court*" could not determine the scope of the verdict, it deferred to the interpretation reached by the district court, which it noted is better positioned to assess the meaning of the verdict figure. *Telecordia*, 612 F.3d at 1378 (emphasis added). That the district court "in the circumstances of [that] case," *id.*, did not abuse its discretion in finding the jury award covered only past infringement, does not mean that a district court in another case in any way abuses its discretion in finding that a jury award is not so limited.

Here, the verdict form, jury instructions, and trial record confirm that the district court's finding that the award covers "past, present,

and ongoing infringement," Appx12, is well within its "broad discretion," *Telecordia*, 612 F.3d at 1378.

### A. The Verdict Form Covers Ongoing Infringement.

As an initial matter, the verdict form on its face covers ongoing infringement. In Question 2, the form asks "What amount of reasonable royalty damages, if any, do you find that Prism has proven by a greater weight of the evidence is adequate to compensate Prism for Sprint's infringement" of the two patents in suit. Appx23485. This question clearly encompasses ongoing infringement. First, the question directed the jury that the award should be "adequate to compensate Prism for Sprint's infringement" of the two patents. *Id.* And, as the district court noted, the jury instructions likewise directed that the jury's award "must be adequate to compensate Prism for the infringement" and "should put Prism in approximately the same financial position that it would have been in had the infringement not occurred." Appx23473. As the district court correctly found, "the jury instructions were clear in providing Prism with complete relief from infringement." Appx12. There is no basis for Prism's request for more.

Prism focuses on this Court's statement in *Whitserve* that "damages by definition cove[r] only past harm" (Response Br. 72), but any offhand comment by the Court is irrelevant here, where the verdict form did not ask the jury to award simply "damages." Instead, the form asked the jury for the amount of "reasonable royalty" damages.[18] And the jury instructions made clear that a "reasonable royalty" in this case encompasses future use. The instructions confirmed that "[i]n this case, Prism seeks a reasonable royalty," Appx23473, and they defined "[a] reasonable royalty" as "the money amount Prism and Sprint would have agreed upon as a fee *for use of the invention* at the time prior to when infringement began." *Id.* (emphasis added). Significantly, they explained that "Prism is entitled to recover no less than a reasonable royalty *for each infringing act." Id.* at 23473–74 (emphasis added). Indeed, Prism argued to the district court that there was no need to include a specific instruction on a lump sum payment because "it's

[18] In any event, Prism's suggestion that an award of "damages" is always limited to past infringement, Response Br. 74, is contradicted by *Telecordia*, in which this Court held that a verdict form asking for "damages" was *ambiguous* as to whether it covered ongoing infringement (and in which this Court deferred to the district court's interpretation of the ambiguous form). 612 F.3d at 1378.

captured within the existing instructions about the jury has to decide there's no less than a reasonable royalty." Appx27892 (Tr. 1429:11–12).

The instructions further provided a starting point for damages with no end point, indicating that damages were not limited to a specific timeframe in the past. They directed the jury that "[i]n determining damages, you must determine when the damages began," and stated that "the date when damages begins is February 26, 2013" for infringement of the '155 Patent only, and "the date when damages begins is February 28, 2012" for infringement of the '345 Patent only or of both patents. Apps23480. Prism could have, but did not, request an instruction with a fixed end point for damages. The instructions thus are plainly sufficient to encompass ongoing damages.

Prism misreads the verdict form in contending that it limited the jury to past damages by directing the jury to answer Question 2 "for each claim you have found to be infringed." Response Br. 74. Prism contends that the word "infringed" in this instruction refers only to past infringement. But as used in the verdict form, the word "infringed" is not a past tense verb, but rather a participial adjective describing the noun "claim." For example, the sentence "The claim is infringed" refers

to continuing infringement even though it uses the participial adjective "infringed." As this example demonstrates, the temporal meaning of the phrase comes from the verb, not the adjective "infringed." The verdict form uses the infinitive verb "to be," which is not limited to past infringement, but rather refers to an ongoing state of being. Had the verdict form meant to cover only past infringement, it could have asked the jury to answer Question 2 "for each claim you have found *was* infringed." Instead it asked the jury to answer Question 2 "for each claim you have found *to be* infringed."

Indeed, Prism was well aware that the verdict form is not limited to past infringement because, in an exchange that Prism omits from its brief, the district court rejected Prism's request to insert the word "past" into the verdict form. Prism argued that Question 1 (infringement) focused only on past infringement and that it was necessary to add the word "past" to Question 2 to make that question consistent with Question 1. Appx27884 (Tr. 1421:19–24). Sprint responded that it would be inappropriate to limit Question 2 to past infringement. Appx27885 (Tr. 1422:4–14). The district court declined to add Prism's requested insertion. Appx27903 (Tr. 1440:8–10). Prism necessarily

understood that the form as provided to the jury, therefore, was *not* limited to past damages. Prism further understood that the district court did not view the form as limited to past damages.

Furthermore, contrary to Prism's suggestion, the district court's response to the jury question did not amend the verdict form to add back in the very limitation that the district court had just rejected. The jury asked "Does royalty payment/damages now give Sprint the license to four asserted patents?" Appx27987–88 (Tr. 1524:25–1525:2). The answer to that question was plainly "no" because there are only two asserted patents, not four, and Prism cannot use that correct response to suggest that the court's answer altered anything in the verdict form. There is no basis for Prism's assumption that the reason for the district court's answer to the jury question was the "license" portion of the question. Indeed, Prism does not contend that the answer to the jury's question could possibly have been "yes," and rightly so: in no circumstance would the royalty provide Sprint a license to four patents. Prism cannot be allowed to use the court's correct and agreed-upon response to retroactively create an issue with the verdict form. If Prism

believed that the response to the jury's question would alter the meaning of the verdict form, it should have said so at the time.

### B. The Record Confirms that the District Court Did Not Abuse its Discretion in Interpreting the Jury Award to Cover Ongoing Infringement.

The evidence at trial further confirms that the jury award covers ongoing infringement. Contrary to Prism's current position, the damages theory presented to the jury was not limited to past damages. Instead, throughout the trial the jury heard evidence that [redacted] Duman testified that [redacted] had licenses to the patents in suit and that [redacted] Appx27189 (Tr. 726:1–7); Appx27190 (Tr. 727:18–22) (Q: "And in 2012 if Sprint had the opportunity and they came to you and asked whether Prism [redacted]" Duman: "Yeah. [redacted]."). And, significantly, Duman confirmed that [redacted] cover future infringement: "Q:

And a [redacted] "A: That's correct." Appx27187 (Tr. 724:13–18) (emphasis added).

Prism's statement that "the jury was never presented with an expert opinion premised on Prism's prior licenses" (Response Br. 79), simply contradicts the record and its own arguments elsewhere in its brief to this Court. Prism emphasized the AT&T Settlement Agreement throughout the trial to prove damages (as well as liability, *supra* 27–32), and Prism's expert Malackowski testified that the AT&T Settlement Agreement was a "good benchmark" for damages. Appx27233 (Tr. 770:9–21). Indeed, Malackowski discussed the settlement at length. *E.g.*, Appx27248–52 (Tr. 785:21–786:16); *see also* Appx27248 (Tr. 785:17) (Malackowski: "So I looked at all of the licenses that Prism has …"). In closing argument, Prism's counsel expressly relied on the AT&T Settlement Agreement in discussing damages, Appx27933–34 (Tr. 1470:18–1471:9), and confirmed that Malackowski's damages figure was based on [redacted] "Mr. Malackowski, he listened to Mr. Duman, he looked at Mr. Minor. *He*

*looked at all the license agreements*. He came up with a royalty rate of [redacted].” Appx27934 (Tr. 1471:10–12) (emphasis added). And the jury followed that, awarding $30 million, which equals [redacted] penalty.

Prism’s position that the jury did not base damages on the AT&T Settlement Agreement is inexplicable, given that earlier in its response brief, Prism argues that it used the AT&T Settlement Agreement to prove damages. Response Br. 47–56.

Not only did Prism repeatedly tell the jury that an appropriate payment for using the claimed invention would be [redacted], it also based its damages theory on a one-time cost, namely the cost to build an Ethernet backhaul. The jury heard extensive argument and testimony that the damages Sprint should pay should be based on what it would have cost Sprint to build an Ethernet backhaul. *E.g.*, Appx26363 (Tr. 69:10–13); Appx26370 (Tr. 76:3–5); Appx27230 (Tr. 767:6–9, 20–21); Appx27231 (Tr. 768:13–16); Appx27236 (Tr. 773:18–20). The district court that “witness[ed] and participat[ed] in the jury trial process,” *Telecordia*, 612 F.3d at 1378, which included ample evidence supporting a lump-sum award, was well

within its broad discretion in interpreting the jury's award as covering past, current, and ongoing infringement.[19]

[19] In its post-trial motion seeking an ongoing royalty, Prism requested that any ongoing royalty should be at an enhanced royalty rate. Prism has abandoned that request on appeal.

## CONCLUSION

For the foregoing reasons, and those in Sprint's Opening Brief, the Court should reverse the judgment, or, at minimum, vacate and remand for a new trial. Alternatively, the Court should affirm the district court's refusal to award supplemental damages and an ongoing royalty.

Dated: June 28, 2016

Respectfully submitted,

/s/ Carter G. Phillips

CARTER G. PHILLIPS
RYAN C. MORRIS
JENNIFER J. CLARK
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

MICHAEL J. BETTINGER
IRENE YANG
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, California 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

*Counsel for Sprint Spectrum L.P.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and the Rules of this Court, because it contains 12,704 words (as determined by the Microsoft Word 2010 word-processing system used to prepare the brief), excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using the Microsoft Word 2010 word-processing system in 14-point Century Schoolbook font.

/s/ Ryan C. Morris
Ryan C. Morris

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of June, 2016, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit through the Court's CM/ECF system. Service copies were sent in accordance with the rules of this Court.

/s/ Ryan C. Morris
Ryan C. Morris